UTICA,
August, 1823.

SMITH
v.
THOMPSON.

SMITH *against* THOMPSON.

MOTION to set aside the verdict, for irregularity in the conduct of the jury.

After they had retired, and remained from 6 P. M. to 3 A. M. without being able to agree on their verdict, two of the jurors eluded the care of the constable, left the jury room, and one of them remained at a neighboring tavern during the night: the other went to his own house, which was near by, ate his supper there, and staid all night. Both jurors returned, however, and the whole were together, and went into Court the next morning. They informed the Court that they had not agreed, stated the point to the Court wherein they differed, took their advice, retired and found a verdict for the plaintiff. No improper communication with the jury appeared; and no probability that their absence had produced any effect upon their minds in making up their verdict.

*Curia.* It was clearly irregular in the two jurors to separate from their fellows. But this does not affect the merits of the case, as between the parties. The ancient strictness, in relation to the conduct of jurors, is somewhat relaxed, as may be seen in *Hackley* v. *Hastie & Patrick*, decided by this Court (3 *John. Rep.* 252.) Whether the verdict is to be set aside, must depend upon circumstances and the real justice of the case. If there is a probability of abuse, we then notice it; but here is none.

Motion denied.(*a*)

Where two jurors (after the jury had retired to consider of their verdict) separated from their fellows, and were gone some hours, but returned and joined in the verdict, there appearing to have been no probability of abuse, the court refused to set aside the verdict.

(*a*) As remarked by the Court, different degrees of strictness, in relation to the conduct of juries, have prevailed at different times: and, it may be added, that their misconduct is viewed in different lights, and with more or less jealousy, according to the nature of the cause, as whether it be civil or criminal; and, as Judges have differed upon this subject, and the decisions hereon, by our Supreme Court, are few in number, a short review of the decisions in England, and in other states, cannot, I think, be unacceptable. (And

UTICA,
August, 1823.

JACKSON
v.
STILES.

JACKSON, *ex dem.* BEAVER, *against* STILES, HUMPHRY,
tenant.

vid. also 1 *Chit. Rep.* 401 *n.* (*b*)   The leading case on this subject is in the Year Book, *De Termino Trinitatis, Anno, XIIII H. VII.* fol. 29 ; *et de Termino Hillarii, Anno, XV H. VII. fol.* 1.   *It was in substance as follows :*
   " In the Exchequer Chamber, before all the Judges of the one Bench and the other, it was rehearsed, that at *nisi prius,* in the county of *B.,* upon an issue between the bishop of *N.* and the earl of *Kent,* the jurors were chosen, tried, and sworn ; and whilst the parties were giving their evidence, there came such a storm of thunder and rain that some of the jury departed without leave of the Justices (it seems they stood open in the street, *Bro. Abr.* Verdict, pl. 19) ; and one of the jurymen went into a house, where he met with persons who told him to take care what he did, for the matter was better for the earl of *Kent* than for the bishop ; and prayed him to drink with them ; and so he did ; and after the storm was over, the jurors returned, and no challenge was taken to them.   They were sent into an inn, and when they were agreed as to the verdict they were to deliver, the earl of *Kent* shewed all this matter to the Justices ; and the jury, on being questioned by the Justices, confessed it all.   Being then asked if they were agreed in their verdict, they said Yes, and found for the bishop ; and the Justices were in doubt if the verdict was good or not, and consequently they adjourned.   *Wood,* Justice, now rehearsed all this matter, and it seemed to him that the verdict should be taken ; and although the jurors had no leave to depart, but did it of their own heads, that is only a ground why they should be punished by fine, as appears best to the Justices. *Vavisor,* J. (in *Bro. Abr.* tit. Verdict, pl. 19.   *Banister,* J.) contra.   When a jury is charged, they are, as it were, prisoners until they are discharged, and cannot depart without the licence of the Justices ; and if they had been put in a house and under guard, and had departed without licence, and then three or four days afterwards they had returned and given their verdict, that would have been void ; then here they departed without licence, and although no evidence was given, that is not material in my view of the case.   *Rede,* J. was of opinion that the verdict was good : he agreed that the jurors are charged that they cannot depart without licence ; but yet there may be some cases where their departure shall be excused, even without licence,

they were a declaration in ejectment, and they were not farther read or explained. The defendant, however, afterwards offered to settle the suit, by an exchange of lands with the lessor of the plaintiff. He had consulted an attorney and done some other acts, shewing that he must have understood the nature of the papers served upon him. He had before been a party in ejectment. He swore that he was an illiterate man, and that he was not the tenant in possession; but made no general affidavit of merits. And affidavits were produced on the part of the plaintiff, satisfactory to the Court, that he was the tenant in possession.

As if an affray happens suddenly before the Justices, and they depart to preserve the peace, their departure is lawful; and so, if they are in a house, and the house fall, they may depart to save their lives. And here, in my opinion, they had a good cause for departing, that is to say, the tempest; therefore their departure is good and excusable. *Davers,* J. of the same opinion. The departure is no good ground to make the verdict void; for this misdemeanour of the jurors, the Justices cannot annul their verdict; they may adjudge a fine upon them, or imprison them, or impose any other punishment of the like nature, according to their discretion; but this is no cause to avoid the verdict. *Tremaile,* J. of the same opinion. First, they had a reasonable ground of departing on account of the tempest, and for reasonable cause, as has been said, they may depart well enough. *Hody,* Chief Baron, and *Brian,* were of opinion that the verdict was void; the latter said, It is reasonable that they should be allowed to depart when they have cause, as in the case of a house falling, &c. but the rain was a feeble cause for the departure; wherefore their going, and all their misdemeanour was without cause; wherefore it seems to me that they shall be fined, and also their verdict shall be void. *Fineux,* J. was of opinion, that the departure was no ground for avoiding the verdict. The case was adjourned, and came on again in *Hilary* Term, 15 *Hen.* 7. fol. 1; when *Keble* said, It seems to me that they may well depart for a reasonable cause, notwithstanding the prohibition, and no punishment shall follow. It is commanded by the statute, that none shall commit waste, and yet the sudden coming of a tempest shall be an excuse for the happening of waste. The same law is of breaking prison, but if the prison be on fire, a departure is no breach of the law. This case is cited in *Bro. Abr.* Verdict, pl. 19; where it is said, that the better opinion is, that the verdict in this case was good, notwithstanding the departure. In *Bro. Abr.* tit. Jurors, pl. 13, it is said, that the jurors may separate by reason of a great tempest or affray, or the falling of a house, and the same law is of a fire in the house. See also *Kelyng's* Rep. 2d edit. 56. The Lord *Dacre's* case, who was indicted for treason before commissioners of oyer and terminer, in the county of *Cumberland,* for adhering to the *Scots,* the king's enemies, and tried by

*Curia.* Although the service was not, perhaps, technically correct, we deny the motion, under the circumstances of this case. As the tenant was not deceived or mislead,(*a*) we consider it equivalent to a technical service. The whole is a mere question of regularity, as it appears upon the papers. The plaintiff is bound, at his peril, to serve the declaration upon the tenant in possession.(*b*) There must be an affidavit of this filed, to warrant a judgment by default against the casual ejector. That must have been done in this case. The tenant's affidavit, that he was not in possession, cannot be considered as an affidavit of merits. It may, therefore, be

his peers, 26th *Hen.* 8. the Duke of *Norfolk* being high steward; and the day before the trial all the Judges assembled to resolve certain questions which might arise upon the said trial, so that if any question should be asked them, they might resolve *una voce* —And a question was moved among them, that if the Peers *did not agree*, so that the Court was adjourned till the next day, what should be done with the Peers, who were the tryers? And some Judges held they were to be kept together all night; but others held, because they were not sworn, for the great trust reposed in them, and presumed to be in them, they might go to their own houses every one by himself. In 2 *Lilly's* Prac. Reg. tit. Jury and Juror, p. 123, a case is cited of *East.* T. 24 *Car.* K. B. where it is laid down, that after a juror is sworn, he may not go from the bar until the evidence is given, and the directions of the Court, for any cause whatsoever, without leave of the Court, and though he has leave, he must have a keeper with him. But it is not stated, that if they disperse with leave, the subseqeunt verdict shall be void. In the case of the *King* v. *Stone, A. D.* 1796, 6 T. R. 530, 1, which, however, was an indictment for high treason, the Court having sat on the first day of the trial, from nine o'clock in the morning till ten o'clock at night, without any interruption or refreshment, and the Attorney General stating that his evidence would occupy four hours more, and some of the jury being very much exhausted and incapable, as they declared, of keeping up their attention much longer, the Court adjourned till nine o'clock the next morning, Lord *Kenyon* observing that necessity justified what it compelled; and that, though it was left to modern times to bring forward cases of such extraordinary length, yet no rule could compel the Court to continue their sitting longer than their natural powers would enable them to do the business of it. The jury retired to an adjoining tavern, where accommodations were prepared for them, and the bailiffs were sworn "well and truly to keep the jury, and neither to speak to them themselves, nor suffer any other

(*a*) *Vid. Ryers* v. *Hillyer*, 1 *Cvines*, 112. *Parkman* v. *Sherman*, id. 344. *Batten* v. *Harrison*, 3 *B.* & *P.* 1.

(*b*) *Vid. Adams on Ej.* 209-10. *Tidd*, 6th ed. 509. 1 *Ch. Rep.* 118. n. (*a*) acc.

contradicted, and the balance of testimony is that he was in possession. But though we deny the motion, we direct it to bemade a part of the rule, that, on filing an affidavit of merits within thirty days, the default be set aside, and the tenant let in to defend, on payment of the costs.

Rule accordingly.(c)

(c) This decision accords with the latest English decisions on this subject, which determine, that if the affidavit of service only state that the notice was *read*, this will not be sufficient, unless the tenant afterwards acknowledge that he understands the meaning and intention of the service; but with such acknowledgment the service will be good, without any statement of the reading or explanation of the notice or service. (*Doe, d. Whitfield*, v. *Roe, K. B. T. T.* 1815, *M. S. Same, d. Quintin*, v. *Roe, K. B. T. T.* 1816, *M. S. Adams*, 217.)

person to speak to them touching any matter relative to this trial." The entry of the adjournment was in the following form : *Thursday* next, after, &c. Forasmuch as it appears to the Court here, from the length of time which has been already occupied by the trial of the issue joined upon this indictment, and the further time which will be necessarily occupied by the same, that justice cannot be done if this Court proceed without intermission upon the said trial : It is ordered, that the jury, empanelled and sworn to try the said issue, have leave to withdraw from the bar of this Court, being well and truly kept by six bailiffs, duly sworn not to permit any person to speak to them touching any matter relative to the trial of this issue, and that the same jury shall again come to the bar of this Court on the morrow, at nine o'clock in the forenoon. And it is further ordered, that the prisoner be again brought, &c.

" After the evidence has been heard, and the jury retire to consider of their verdict, the oath administered to the bailiff, who is sworn to keep them, is as follows : You shall swear that you shall keep this jury without meat, drink, fire, or candle ; you shall suffer none to speak to them, neither shall you speak to them yourself, (not adding the words, touching any matter relative to this trial, as in 6 *T. R.* 530, 1, & *supra*,) but only to ask them whether they are agreed. So help you God. (*Dalt.* c. 185 ; 2 *Hale*, 296 ; *Dick.* Sess. 223 ; *Bac.* Ab. Juries, G. ; 1 *Chitty*, C. L. 632.) Accordingly, in *Com.·Dig.* tit Enquest, F, it is laid down, that after the evidence given, the jury ought to continue together till they agree of their verdict, without eating, drinking, fire or candle, or speaking with any one, except the bailiff, to know if they be agreed. (*Co. Litt.* 227, b ; 3 *Inst.* 29, pl. 13. 15 *Hen.* 7. 1, 2.) If a great tempest happens, the jury may depart from the place where they are to consider of their verdict. So if a sudden affray happens, or if the house be upon the point of falling. (*Vin.* Abr. tit. Trial, G g 4. cites *Bro.* Verdict, pl. 19, 14 *Hen.* 7, 29. *Per Rede, Davers, & Tre-*

UTICA,
August, 1823.

TROTTER
v.
HAWLEY.

One of the defendants having omitted to put in special bail, the plaintiffs' attorney, for that reason, refused to receive a plea ; but a few days after filed common bail, and entered a default, and it was holden regular ; but set aside on affidavit of merits, upon terms.

TROTTER & DOUGLASS *against* HAWLEY & ROSÉ.

THE plaintiffs having declared, *de bene esse*, and special bail being due, one of the defendants had omitted to file bail. A plea was offered to the plaintiffs' attorney, which he refused to receive for that reason ; but, a few days after, he filed common bail, and entered the defendants' default.

*maile*, *Bro.* Jurors, pl. 13, S. C.) The same law seems to be of fire upon the house (*ib. ibid. Vin.* Abr. tit. Trial. (G g 4.) So in *Com.* Dig. tit. Enquest, F. ; if the jury separate on account of a great tempest, they shall not be amerced. (*Plowd.* 13 b. 15 *Hen.* 7. 1 b. 14 *Hen.* 7. 30.) In 4 *Bla.* Com. 360, it is said, that when the evidence on both sides is closed, and indeed when any evidence hath been given, the jury cannot be discharged (unless in cases of evident necessity, Co. *Litt.* 227, 3 *Inst.* 110. *Fost.* 27. *Gould's* case, *Hil.* 1764) till they have given in their verdict, but are to consider of it, and deliver it in with the same forms as upon civil causes, only, they cannot, in a criminal case, which touches life or member, give a privy verdict. But the Judges may adjourn while the jury are withdrawn to confer, and return to receive the verdict in open Court. In *Parke's* case, 2 (*Roll.* Rep. 85,) at *Nisi Prius*, a juror was challenged and withdrawn, and afterwards went out with the jury and stayed with them above half an hour. And by *Croke & Doddridge*, this act shall not set aside the verdict, unless it can be proved that they had new evidence given after they went out of Court, but it is a misdemeanour in him who was challenged, and punishable. (2 *Hale*, P. C. 308, 9. *Vin.* Abr. Trial, G g 4. See also Lord *St. John* v. *Abbot*, *Barnes*, 441.) This cause was tried at the *Northampton* Summer Assizes, (8 *Geo.* 2.) before Mr. Justice *Reeve ;* and after the evidence was summed up in the forenoon, the jury retired to consider of their verdict ; before the rising of the Court, they came into Court, attended by the bailiff, to ask a question, which was answered, and they were sent back. At the sitting of the Court in the afternoon, the Judge, was informed that some of the jurymen (two or three) were in Court ; whereupon, being asked by him what they did there, answered, they could not agree, and were thereupon sent back to their fellows, and afterwards a verdict was brought in for the plaintiff. The Judge did not certify the verdict to be contrary to evidence, and the Court were of opinion that this was a misbehaviour in the jury, for which they were finable, but not a sufficient cause to set aside the verdict, and the plaintiff was not in fault. If the jury had eat and drank at their own expense, that is a misbehaviour for which they are finable, but their verdict must stand ; though it is otherwise if they had eat and drank at the expense of either party. Rule discharged. See al-

On motion to set aside the default for this reason, and on an affidavit of merits,

*Per Curiam.* This was disingenuous in the attorney, but his proceedings were regular. There being an affidavit of merits, we set aside the default on the usual terms.

Rule accordingly.(*a*)

(*a*) *Vid. Wells* v. *Allen, ante,* 60.

.so 1 *Vent.* 124; 2 *Rol. Ab.* 715; *Hawk.* B. 2. c. 47. In *Bul.* Ni. Pri. 308, it is said, an officer of the Court ought always to be placed at the door of the box where the jury sit, to prevent any one from having communication with them; and when they depart from the bar, they are to be attended by a bailiff, sworn for that purpose. At the present day, it appears, that the jury will not be permitted to disperse after they have retired for the purpose of considering their verdict; although, in a case of misdemeanour, a dispersion of the jury, with the Judge's concurrence, on an adjournment taking place during the progress of a trial, will not be sufficient to avoid the verdict. Convenience seems to be in favour of this practice. It is always in the power of the Judge to prevent the jury from dispersing where the trial is of such a nature as to render it expedient that the jury should be kept together. Some consideration also seems due to the jury, who are in general, men of active lives and regular habits, and are therefore likely to sustain great inconvenience by being totally prevented, during the continuance of a very long protracted trial, from any attention to their affairs, however urgent."

Accordingly, in *The King* v. *Woolf et al.* (1 *Ch. Rep.* 401) at an adjourned Sittings, at *Guildhall*, in *April*, 1819, *Cor. Abbott*, Ch. J. the trial of an indictment for conspiracy commenced on the morning of the 20th, and continued till about 11 at night. The case being then unfinished, *Abbott* informed the jury that they might retire to their families; but specially warned them not to have any communication, with any person, touching or concerning the matter in issue. They retired, accordingly, and the next morning they assembled again; and, the case being concluded at a late hour in the afternoon of that day, they found the defendants guilty. The defendants, and their attornies, were ignorant of such separation and retirement, until after they had found their verdict.

On motion to set aside this verdict, the cases were fully gone into by four counsel for the defendants; and they cited Lord *Delamere's* case, (4 *Harg. St. Tr.* 232, 1 *Jac.* 2, *A. D.* 1685; and *Kelyng*, 56) where it is said, by all the Judges, (on a question whether the Court could allow the jury to separate) " the jury, being once charged, can never be discharged till they have given their verdict; this is clear; and the reason of that is, for fear of corruption and tampering with the jury. An officer is sworn to

UTICA,
August, 1823.

REYNOLDS
v.
MANNING.

The defendant having been arrested, and given bail to the sheriff for a debt from which his person had been discharged, under the statute, &c. moved to be discharged on common bail, which was refused, because a *prima facie* case of fraud was made out against him by affidavit.

## REYNOLDS *against* MANNING.

IN assumpsit, the defendant had been arrested without any previous order, and had given bail to the Sheriff; and the motion was to discharge him on common bail, because he had obtained his discharge from the debt claimed in this action, under the "act to abolish imprisonment for debt in

keep the jury, without permitting them to separate, or any one to converse with them, for no man knows what may happen ; for, though the law requires honest men should be returned upon juries, and without a known objection, they are presumed to be *probi et legales homines ;* yet they are weak men, and, perhaps, may be wrought upon by undue applications." And 1 *Inst.* 227, b ; 2 *Hale, P. C.* 296-7 ; *Palm.* 380 ; *Metcalfe* v. *Deane, (Cro. Eliz.* 189 ;) *Roll. tit. Trial,* 714, *pl.* 1, 6, 8, 25 ; *Com. Dig. Pleader, (S)* 45 ; *Roll tit. Trial,* 716, *pl.* 20 ; *Pratt's case, (id. pl.* 19 ;) *Hunt* v. *Locke,* (1 *Keb.* 300 ;) 11 *H.* 4. 17 ; were also cited. None of these authorities, except the first, respect the separation of the jury, with or without leave of the Court; but merely the great strictness of their behaviour while together, as to eating and drinking, having fire or candle, conversing; or hearing conversation, or hearing evidence while going from the bar, or at their room, or taking evidence with them, and how closely they are to be watched and kept by a sworn bailiff. Mr. *Denman* also mentioned Dr. *Watson's* case, (2 *Starkie,* 116,) who was tried, in 1817, for high treason, as an accomplice with the famous *Arthur Thistlewood.* In that case, which lasted several days, the jury were kept together, under the charge of a bailiff. So, in the protracted trials in 1794, of *Horne Tooke, &c.* steps were taken to prevent the possibility of any communication with the jury during adjournment. And vid. 6 *T. R.* 530, *n.* (*a*) *Bac. abr. verdict, and Rex* v. *Stone* (6 *T. R.* 530-1.)

But the Court were unanimous in refusing the rule. *Abbott, C. J.* who tried the cause, said, *(inter alia)* "The trial began between 9 and 10 in the morning ; it had proceeded until 11 o'clock at night, or later, before the evidence on the part of the prosecution closed. Learned counsel were employed separately for several defendants. It must be assumed, (and nobody could assume to himself the contrary,) that in that stage of the case, evidence would be laid before the jury on the part of the defendants. It became matter, therefore, of necessity, that the trial should be adjourned, and an adjournment accordingly took place from the necessity of the case, the jury being fatigued both in mind and body ; and it would have been injurious to the case of the defendants, even if the Judge and jury had had strength enough to go on till the trial came to a close ; I say, most injurious

certain cases," passed April 7, 1819. (*Vid. sess.* 42, *ch.* 101.) And this was opposed by an affidavit, shewing certain facts, ·wh·ch amounted, *prima facie,* to evidence of fraud in obtaining the discharge ; and

UTICA,
August, 1823.

REYNOLDS
v.
MANNING.

> *Per Curiam.* For that reason we deny the motion.(*a*)

Motion denied.

(*a*) And so note the difference, between a discharge under *this,* and the *two-third act.* The latter is considered conclusive, as will be seen in *Reed* v. *Gordon* & *Wallock,* (ante 50.) The *English rule, as mentioned* (ante 50, *n.* (*a*) seems, by this decision, to apply in case of a discharge under the *act to abolish imprisonment for debt.*

to the case of the defendants, if their case was heard by persons whose minds were exhausted with fatigue, as it would have been if an adjournment had not taken place. An adjournment of this nature is not necessarily followed by the dispersion of the jury, for, in many cases, (and in many cases they ought) they are kept together till the close of the trial. But I am of opinion, that in case of a misdemeanor, their dispersion does not vitiate the verdict ; and I found my opinion upon the admitted fact, that there are many instances, of late years, in which juries, upon trials for misdemeanors, have dispersed, and gone to their abodes during the night for which the adjournment took place ; and I consider every instance in which that has been done, to be proof that it may be done." [He went on to shew that the consent of the defendant could make no difference, and ought not to be asked. And vid. 6 *T. Rep* 530, *n.* (*a*) where it was held, that, in *Tooke's* trial for high treason, the Court might adjourn from day to day, during the trial, without the prisoner's consent, and that this ought to be done.] He said farther, " The only difference that can exist between the fact of the jury separating with or without the approbation of the Judge, as it seems to me, is this ; that if it be done without the consent or approbation of the Judge, express or implied, it may be a misdemeanor in them, and they may be liable to be punished; whereas, if he gives his consent, there will be no such consequence of a separation. But though it may be a misdemeanor in them to separate, without his consent, it will not avoid the verdict in a case of this kind, as it would if the law required the jury to be absolutely kept together. Now it is not surmised, in this case, that, during the night, (for it was during night only that the separation took place) any attempt was made to practise upon the jury. If any thing of that could have been shewn, the Court would require that matter to be investigated. But it is not even suggested, that any such thing took place. All that is suggested is, that, in point of fact, the jury were allowed to go to their own homes, in order to take their necessary refreshments, which,

UTICA,
August, 1823.

AVERY
v.
CADUGAN.

AVERY *against* CADUGAN.

A notice of motion for the "next term" is good, without mentioning any particular day.

BRADISH moved to set aside the execution in this cause.

*C. P. Kirkland,* objected that the notice of the motion was for the *next term,* generally, without specifying any particular day.

*Curia.* This includes the first day of the term, and is sufficient.

Motion heard.

they might have had at some other place with much less convenience to themselves. (Vid. *Com. Dig. Pleader,* (S) 11.) It seems to me that the law has vested in the Judge the discretion of saying whether or not, in any particular case, it may be allowed to the jury to go to their homes, during a necessary adjournment throughout the night."

*Bailey,* J. said, "In almost every trial, it is in the experience of persons who attend courts of justice, the Judge as well as the jury are occasionally absent for a short period. This is very often so ; and, perhaps, it may be said, improperly. But they go out only for a few minutes. If, then, a separation for a night will vitiate a verdict, why not a separation for a few minutes ?" Again : "Every object and purpose of justice is effectually answered, and every supposed inconvenience rebutted, by the law as it now stands ; for as the law now stands, if the jury separate without consent, and improperly so, it is in the discretion of the Judge who tries the cause, to impose upon them such punishment and fine as he may think fit." [He admitted that, where the verdict was against evidence, the separation might weigh towards setting it aside ; but proceeded,] "When the fact of separation, *per se,* is urged as the ground for a new trial, it is of no weight." *Bailey & Holroyd,* Js. both thought this question might be more solemnly reviewed on error, if the party choose to proceed in that way ; and

*Holroyd,* J. said, "I do not find any authority, in law, which says that the separation of the jury, in a case between party and party, or in case of a misdemeanor, does avoid the verdict. If the jury are guilty of any improper conduct, in any separation, which ought not to take place without the authority of the Court, they may be guilty of a misdemeanor, and may be fined          as such ; but it appears to me that that would not avoid the verdict. In case any probable mischief is likely to result from a separation, without any care being taken to prevent it, either from the inattention of the Judge, or upon any suggestion of that kind, you may direct such measures to be taken as shall prevent the effects of such sepa-.

UTICA,
August, 1823.

GRISWOLD
v.
WALTON.

GRISWOLD *against* THE TERTENANTS OF WALTON.

ON appeal from a taxation, under the statute,(a) of the Sheriff's fees in this cause, for serving the writ of *scire faci-as*, the Court *allowed* to the Sheriff the following charges :

Serving writ on 32 defendants,        $16,00

Travel fee on 32 defendants, 5 miles each,
    all the defendants residing in one village,
    5 miles from the court house,        ¯9,60

(a) *Sess.* 41, *ch.* 259, *s.* 12.

Fees for serving *scire fa cias* on several defendants : 50 cents for serving writ on each defendant, beside mileage allowed for each ; also, return, 12 1-2 cents, and 2 summoners for each tenant, at 50 cents each summoner. Summons in writing, disallowed.

ration, assuming under such circumstances any mischief is likely to arise. It appears to me, however, to be matter that will not avoid the verdict."

*Best,* J. said, " I am alarmed at the extent to which the proposition contended for may be carried, if it is well founded ; for if this is a mis-trial, in consequence of a separation of the jury, I cannot discover any distinction between a separation for a minute, and a separation for a considerable period of time ; for, if the argument is right, it is right to this extent, that if by any accident a jury gets out of the box for a single minute, it is a mis-trial. Let us see the extent of mischief to which this doctrine may be carried. Suppose, in the case of a trial for capital felony, some of the jury by accident get out of the box, and the prisoner, in the result of the trial, is acquitted, the consequence of this argument would be a mis-trial, and the man must be put on his trial again. That is a consequence which alarms me, and I do not feel that we ought to give any countenance to an objection which would go to such a mischievous extent. Several cases have been cited, and it appears that the only one which touches this question is that of Lord *Delamere,* in the 4th *State trials,* where the Judges appeared to have said, that the jury once charged cannot be discharged. That that might be law at one time, I have no doubt ; but the practice for a long period of time will shew what the law is ; and I believe there is no Judge who has sat for any length of time in this Hall, that has not known and approved of discharges of juries. The constant and uniform practice which has existed for a considerable length of time, will shew that what is stated in Lord *Delamere's* case is not now to govern our decision." In another place, he remarked ; "The Judge is vested with a discretion on the subject, which he will exercise on his own motion, in keeping the jury together, or if either of the parties desired it, no Judge would refuse such an application. If it were stated by the parties, that there is cause to apprehend that some improper practices might take place if the jury were separated—that by mix-

UTICA,
August, 1823.

GRISWOLD
v.
WALTON.

Returning the writ,                                    $00,12½.
Summoners fees—2 Summoners for each
    tenant, 50 cents each,                             32,00
Taxing costs and attendance,                           75

But *struck out* the following charge as improper :
Summons in writing, prepared and left with
    each tenant, 50 cents each,                    $16,00

*Birdseye*, for the Sheriff.

*Lynch*, contra.

ing with the multitude they might imbibe their feelings, or that they might be influenced in their verdict by any communication with the crowd, there-is no Judge who would not prevent that from taking place, by keeping the jury apart from the multitude, till they gave their verdict.  But if any such application were made by either of the parties, I do not see how it could be complied with in such a case as this, unless the party applying un-dertakes to defray the expense attendant upon keeping them together : for, in the case of a misdemeanour, I do not understand where the expense is to come from ; for I do not agree in the propriety of keeping the jury shut up for a number of days at their own expense.  It appears to me, howev-er, that no mischief can result from allowing juries to separate ; a discretion being always vested in the Judge, as to the propriety or impropriety of keeping them together, in each particular case."

The AMERICAN CASES, on this subject, present nearly the same view of the question as the *English*, with the exception of *Connecticut.*  In that state, though formerly held otherwise, and now *apparently* forbidden by a statute, the jury exercise the right of separating and assembling according to convenience, like our grand jurors in this state, even after they have re-tired from the bar, under charge of the officer.  In *Brandin* v. *Grannis*, *et ux.* (1 *Con. Rep.* N. S. *n.* (*a*) in Error, *Nov.* 1811, this practice was sanc-tioned by a judicial decision, of their highest tribunal.  Yet shortly before this, (1808,) the late *Livingston*, J. (*C. C. U. S. Lester* v. *Stanley*, 3 *Day's Rep.* 287.) did not consider that practice warrantable under the statute, which he said appeared to have been made in affirmance of the common law ; and he told the jury, if they separated before they had agreed, he should set their verdict aside.  The ancient practice, in that state, was in accordance with Judge *Livingston's* decision, as appears by an adjudged case in 1811 (*Nichols* v. *Whiting*, 3 *Day's Rep.* 287, *n.* a.)  And in *Bran-din* v. *Grannis*, *Baldwin*, J. who delivers the opinion of the Court, seems to admit, that a literal interpretation of the statute would forbid a separa-tion.  He reposes himself upon a practical construction to the contrary, for a great number of years, which he holds consonant to the spirit of the stat-ute, and vindicates the correctness of the practice by another provision, requiring from the petit jury an oath of secresy, like that which our grand

MORTON's executors *against* CROGHAN's terre-tenants.

SEVERAL defendants appeared and pleaded by one attorney, and being entitled to costs against the plaintiffs, (*vid. S. C.* 20 *John.* 106,) the question was submitted whether a *retaining fee* should be allowed for *each* tenant.

*Curia.* Only one retaining fee is allowable. It would have been otherwise, had the defendants appeared by *different* attornies. This they were entitled to do, but they have chosen to proceed *jointly.*

One retaining fee only allowed.

Where several defendants appear and plead by one attorney, only one retaining fee will be allowed in taxation against the plaintiff.

Otherwise, when they appear by *different attornies.*

jurors take, to which their statute has superadded an oath against all communication with others, in relation to the subject in hand. "No evils," says he, "that I perceive, result from the practice, in pursuance of this construction, which would not follow the separation of jurors after they had agreed on, and before they had delivered up their verdict. This the statute permits. I presume, also, with us, where Courts are in the habit of returning juries to a second consideration, if the jury should agree upon a verdict, and then separate ; and, after reflection, should, on the next day, agree upon a different verdict, they might lawfully do so. If they may, the agreement is of no avail; and, under a different practice, would soon be a mere pretence for separation. Nothing, then, short of a rigorous confinement, according to the rule of the common law, till the verdict is delivered up, would attain the object sought. Many inconveniences would follow a literal execution of the statute, as claimed. It would hazard many late judgments now considered at rest. It would make a very unpleasant innovation upon the habits of our jurors ; and I am confident that justice would not be promoted, truth more clearly discovered, or parties be better satisfied, by hurrying on a jury to a hasty decision, and denying them respite, or repose till they should agree. Causes are often committed to the jury, at a late hour of the day, which require much reflection, investigation, and sometimes calculation. They will, generally, be ill prepared for this, immediately after the fatigues of a tedious trial, and may be unable to come to a result in seasonable hours ; yet such are the cases to which the rule will most frequently apply. In ordinary cases the jury have no occasion to separate, and seldom do. This construction of the statute does not appear to me unreasonable. It is certainly conformable to the temper of the times, and the habits of our citizens. And I am not convinced that we are now bound to abandon it, after it has been sanctioned by so long and quiet usage ; nor that the advantages would over-

UTICA,
August, 1823.

SPEIDELL
v.
FASH.

A justice may, on the plaintiff's request, adjourn 7 days exclusive from the return of a summons, when the 6th day is *Sunday*.

## SPEIDELL *against* FASH.

CERTIORARI to a Justice's Court. *Fash* sued *Speidell* by summons, returnable *March* 10th, 1823. The cause was adjourned, on the defendant's request, to the 13*th March;* on which day the plaintiff's agent making oath that a material witness was sick, the Justice adjourned to the 17*th* of *March,* being 7 days exclusive of the 1st, after the return of the process. This was on the ground that the 16th was Sunday ; and holden well.

*W. H. Coleman,* for the plaintiff in error.

*E. McGaraghan,* contra.

Judgment affirmed.(*a*)

(*a*) Vid. ante 19, *n.* (*a*) Where the Justice adjourns for a longer time than is allowed by law, it is a discontinuance. (1 *John. Cas.* 101-2. 3 *Caines,* 171. 2 *John.* 192. 7 *John.* 381.)

balance the inconveniences resulting from a change." *Smith,* J. dissented. Accordingly, in *The State of Connecticut* v. *Babcock,* 1815, in the Court of Errors of *Con.* (1 *Con. Rep. N. S.* 401) this construction again received a judicial sanction, by the whole Court.

*New-Jersey.* In *Clark* v. *Cole,* (1 *Penn. Rep.* 278) the jury separated, after retiring, and before delivering their verdict. Some of them, while considering of their verdict, went out of the room, and returned again in a few minutes, and the Court refused to set the verdict aside, for this reason, as there was no improper practice of the party in whose favour the verdict was rendered. In *Crane* v. *Sayre,* on certiorari, (1 *Halsted's Rep.* 110) while an argument was pending before the Justice, as to the competency of certain testimony, some of the jurors left the room, and returned again without leave or consent, and without an officer to attend them. *Curia.* " A juryman, who leaves his fellow jurors, without notice or leave, certainly treats the Court with great contempt, for which a fine ought to be imposed on him, as soon as the verdict is rendered ; and he ought to be committed till the fine is paid. It would retard the trial extremely, and work great confusion for the parties, if the Court had to call the list of jurors every few minutes, to be sure they were all present, as must be done if jurors may go off without notice or leave. But a verdict is never set aside for a juror's misbehaviour *towards the Court,* unless it is prejudicial to one or other of the parties, and no such thing appears in this case." Judgment af-

GALE *against* BARNES.

CERTIORARI to a Justice's Court. After issue joined in *assumpsit* on account, by *Barnes* against *Gale*, the defendant said he would go on and try the cause, and the Justice told the plaintiff to go on with his account. The plaintiff then asked the defendant if he would admit any of his account? and the defendant did admit one or two of the charges, and

*Where the justice tells the plaintiff to go on to trial, after both parties have avowed themselves ready, and, on being asked, the defendant admits part of the plaintiff's account, and a witness for the plaintiff is partly sworn, it is too late to call for a venire.*

firmed. But, in *Shepherd* v. *Baylor*, (2 *South. Rep.* 827) on certiorari, the jury, after they had retired, left the room, forcibly and against the will of the constable; one of them actually absconded, and returned home to his own house; and two others were found in the publick road, and could not be gotten to return, till they were actually seized and taken back by the constable; and, *per Curiam.* " Conduct like this is too gross to be tolerated. It is such a deviation from duty, decency, and order, as to impeach the motives, as well as the verdict, of any jury." Judgment reversed.

*Rhode-Island.* In *Burrill* v. *Phillips*, cor. *Story*, J. (1 *Gall. Rep.* 360) the jury were charged late in the evening, and one of them, through mere mistake of his duty, left his fellows, and went immediately to his own home, at the distance of 2 miles, but was sent for, and returned back in about 2 hours, when the jury, without difficulty, agreed on their verdict; and, per *Story*, J. " At first, I was struck with the inconvenience of allowing a verdict after a separation of the jurors; and when an opportunity had been given to tamper with them And, without doubt, as this is an application to the discretion of the Court, the verdict ought to be set aside, unless the conduct of the juror be free from unfavourable presumption. I am perfectly satisfied with the verdict in this case. Indeed, I do not see how it could have been otherwise, upon the evidence before the jury; and I should feel great reluctance in setting aside a verdict so well founded in law and justice. I am glad to be relieved from all doubt, by authority. The case of *St. John* v. *Abbot*, (*Barnes*, 441) is directly in point, and the distinction assumed by the plaintiff's counsel, is, in general, well supported. I overrule the motion to set aside the verdict."

*Virginia.* But in the important case of the *Commonwealth* v. *John M'-Caul*, (*Virginia Cases*, 271) decided by the Superior Court, in 1812, the prisoner was indicted for grand larceny: The trial continued 4 days: on each of which the Court adjourned for about 2 hours, giving orders, that in the mean time the jury should be kept together, in a room by themselves, where they were allowed refreshments. On their way to the jury room, at the 2d adjournment, one of the jurors, having been unexpectedly sworn on the jury, separated from his fellows for about 20 minutes, to attend to

UTICA,
August, 1823.

GALE
v.
BARNES.

objected to the others.  The plaintiff then called a witness, and after the Justice had begun to administer the oath, the defendant demanded a venire, which the Justice refused. Judgment for the plaintiff.

*John V. D. Scott,* for the plaintiff in error.

*E. Barnes,* contra.

some necessary business.  His pretence was that he wished to dine at home ; his departure was opposed by the Sheriff, who admonished him not to go, and took hold of his arm to prevent him.  He went, however, unattended by an officer, there being none in waiting who could conveniently attend him.  The juror stated that he believed the Court, at that time, did not instruct the jury to remain together ; and he understood the design of the adjournment was with the view that the jury might obtain some refreshment.  He ate his dinner at his boarding house, and returned.  Several persons asked him if the trial of *M'Caul* had ended, to which he answered in the negative, but he had (as he stated) no further conversation with any one on the subject of the trial ; denied that he had been practised with, and no abuse appeared.  Another juryman was absent a few minutes on a visit to his sick child, (this was on the morning of the 2d day of the trial,) with an officer, from whom he was separated about 5 minutes, on going into his chamber to see the child.  Verdict of guilty.

On moving to set this verdict aside, Mr. *Wirt,* for the prisoner, defied the Attorney General to produce a single case of life and death, in which a verdict was allowed to stand after a separation of the jury ; and Mr. *Nicholas, the Attorney General,* said that Mr. *Wirt* could not produce a single case from the English books, in which the separation of one juryman from his fellows was considered sufficient to set aside the verdict.  He said " there are many instances in which the jurors may be subject to punishment for misbehaviour, and yet the verdict will stand ; and he referred to 2 *Hale,* 306. 21*st Viner,* 448. *Bull. N. P.* 308, *and 7 Bac.* 11, 12.  He referred also to a case stated in 2 *Hale,* 296, which is thus given by him : " Upon not guilty pleaded, 12 are sworn to try the issue ; after their departure, A, one of the 12, leaves his companions, which being discovered to the Court, by consent of all parties, B, another of the panel, is sworn in the place of A, and afterwards A returns to his company, which being made known to the Court, A is called, and examined why he departed ? he answered " to drink ;" and being examined whether he had spoken with the defendant, denied it upon his oath ; whereupon B was discharged from giving any verdict, and the verdict taken of A and the other 11, and A fined for his contempt." (34 *E. 3. Office de Cour,* 12, *in trespass.*)

A majority of the Court were of opinion that actual tampering, or conversation on the subject of the trial with a juryman, was not necessary to set aside the verdict.  And per *Nelson, J.* (who delivered the opinion of

the Court) "from the mode in which collusion and tampering is generally
carried on, such circumstance is generally known to no person, except the
one tampering, and the person tampered with, or the persons between whom
a conversation may be held, which might influence the verdict.  If you
question either of these persons on the subject, he must criminate, or de-
clare himself innocent, and you lay before him an inducement not to give
correct testimony.  The old rule was, that the jury on no occasion, should
separate.  I mentioned (though it was with difficulty that the rule has been
at all relaxed) that it is relaxed only in cases of imperious, or perhaps of
unavoidable necessity.  But by allowing that a jury may separate without
necessity, and that their verdict shall stand, unless the party accused, who,
in these cases, is in the custody of law, can shew that the jury not only have
separated, but that they, or a member of it, has also been tampered with,
or held communication on the subject; this great barrier against oppression
may gradually be sapped and undermined, and the bulwark cannot long
remain.  Such a precedent would be productive of evils incalculable, and
too great for the Court, by its decision, to allow a door to be opened for
them.  Every danger, and particularly in such a case as this, should be
watched, and opposed in the beginning.  The Court will preserve "with
fear and jealousy," and will not expose the trial by jury in criminal cases to
such risk of contamination, as arises from the affidavits in this case.  If the
Court hath, without necessity, suffered a juryman to go home without an
officer, (which it would never do) it would vitiate the verdict.  There is
as much danger from a juryman's separating, without the act of the Court,
as if it had been done by such act.  Although there might be, and proba-
bly was no tampering with any juryman in this case, yet, in a free country,
in deciding a particular cause, the decision is to be according to general
principles as applied to that case; and more good will arise from preser-
ving the sacred principle involved in this case, than evil from granting a
new trial, although in this individual instance, a verdict has probably been
given by twelve men, in fact, unbiased by the separation."