Carr, J.
The question is, whether the county court ought, for such misbehaviour as that imputed to this jury, to have set aside its verdict, and ordered a new trial ? Courts have always been vigilant to preserve the purity of jury trial, and to check every thing that looks like an attempt to corrupt or tamper with the jurors. To attain this purpose, the old law directed, that after they were charged with the evidence upon the issue, the jury should be kept together, in some convenient place, without meat or drink, fire or candJe, and without speech with any, unless it be the bailiff, and with him only if they be agreed; Co. Litt. 227. b. This extreme rigour, which must often have sacrificed the end to the means, has been very much relaxed by the practical good sense of later times. Yet, even while it existed in full force, it was not every misbehaviour of a jury which would set aside its verdict. Thus, in the case of Mounson v. West, 1 Leon. 132. cited 7 Gwil. Lac. Abr. Verdict. H. p. 11. “ after the jurors had been locked up together for some time, the officer who attended them, being surprized at their delay in rendering a verdict, searched them, and found figs in the pockets of three, and pippins in the pockets of two others: this being represented to the judge, the three, who confessed the having eaten of the figs, were fined £ 4. each, and the other two, notwithstanding they declared upon oath that they had not eaten of the pippins, were fined forty shillings each: but the verdict was upon conference with the judges of the other courts, holden to be good.” In Co. Litt. 227. b. it is also laid down, “ that if the jurors after their evidence given to them at the bar, do, at their own expense, eat or drink, either before or after they be agreed on their verdict, it is finable, but it shall not avoid the verdict: but if before they be agreed on their verdict, they eat or drink at the charge of the plaintiff, if the verdict be given for him, it shall avoid the verdict: but if it be given for the defendant, it shall *4 not avoid it, et sic e converso. But if after they be agreed on their verdict, they eat or drink at the charges of him for whom they do pass, it shall not avoid the verdict”— that “if the plaintiff after evidence given and the jury departed from the bar, or any for him, do deliver to them any letter concerning the matter in issue, or any evidence, or any escrowle touching the matter in issue, which was not given in evidence, it shall avoid the verdict, if it be found for the plaintiff but not if it be found for the defendant, et sic e converso.” Hence it appears, that, even in that day of strictness and severity, the misbehaviour of the jury did not avoid the verdict, unless it involved some suspicion that the finding had been influenced by such misbehaviour. In the Year Book, 14 Hen. 7. fo. 29. 15 Hen. 7. fo. 1. upon an issue between the bishop of N. and the earl of Kent, the jurors were chosen, tried and sworn; and while the parties were giving their evidence, there came such a storm of thunder and rain, that some of the jury (who, it seems, were hearing the cause in the open street, Bro. Abr. Verdict, pi. 19.) departed without leave of the justices ; and one of them went into a house, where he met with persons who told him to' take care what he did, for the matter was better for the earl than the bishop, and prayed him to drink with them, which he did; and after the storm was over, the jurors returned, and no challenge was taken to them. They were sent into an inn, and when they were agreed on the verdict they were to deliver, the earl of K. shewed all this matter to the justices ; and the jury being questioned by them, confessed it all. And being asked, if they had agreed on their verdict, they said yes, and found for the bishop. And the justices being in doubt Whether the verdict was good or not, the case was adjourned into the exchequer chamber before all the judges. There was a difference of opinion, but a considerable majority of the judges decided, that though the jurors might be finable, the
*5 verdict was good. We see here, the same principle which governed the other cases : the juror who talked and drank with the friends of the earl of K. united in the verdict against him; it was clear, therefore, that no improper influence had operated. The case of Lord St. John v. Abbot, Barnes 441. cited 7 Bac. Abr. 12. is to the same purpose. That cause was tried at nisi prius, 8 Geo. 2. before Mr. Justice Reeve. The jurors, having received their charge, withdrew. They came after-wards into court, to ask a question of the judge; which being answered, they again withdrew. At the sitting of the court, in the afternoon of the same day, the judge was told that two or three of the jurors were in court. Being asked by the judge what they did there, and answering that they and their fellows could not agree in a verdict, they were ordered to go to their fellows. A verdict was afterwards given for the plaintiff, and the judge did not report that it was contrary to evidence. The court being moved that this verdict be set aside, it was holden to be good; and by the court—“Some of the jurors have been guilty of a great misbehaviour, and are liable to be fined; but as the plaintiff has not been guilty of any misbehaviour, the verdict ought to stand.” The latest english case I have found on the subject, is The King v. Kinnear and others, 2 Barn. & Ald. 462. 1 Chitt. Rep. 401. S. C. That was a prosecution for a misdemeanor; which makes the case stronger. The case commenced in the morning, and was not finished at eleven o’clock at night, when the jury, by permission of the judge, but without the consent or knowledge of the defendants or their attorneys, separated and went to their respective homes : On the next day, the jury met, the cause proceeded, and they found the defendants guilty: and after the verdict, the separation of the jury coming to the knowledge of the defendants, a new trial was moved for. The subject was discussed by the ablest counsel; all the authorities cited, and considered, *6 both by the bar and the bench; and the court unanimously refused the new trial. They admitted, that the fact of the judge having permitted the jury to separate, made no difference as respected the new trial; neither would the consent of the defendant have made a difference ; for as chief justice Abbott said, “ if the law requires that the jury shall at all events be kept together, until the close of the trial for a misdemeanor, the judge cannot dispense with it: the only difference between a dispersion with or without the consent of the judge, seems to be this, that in the latter case, the jury may be liable to be punished for a misdemeanor. But though this may be so, still it will - not avoid the verdict. If there had been any attempt to practice on the jury, the court would most undoubtedly have listened to it, and required the fullest investigation; but that is not suggested.” There are several american cases much to the same effect—all which, with much more on the subject, may be found, in a learned and useful note of the reporter on the case of Smith v. Thompson, 1 Cow. 221. There remains to be noticed, one case in this court, Howle's adm'r v. Dunn & Co. 1 Leigh 455. There, a motion was made for a new trial, on* the ground, that after the jury had retired from the bar, and before they rendered their verdict, they had left the jury room, and dispersed over the court yard. The county court overruled the motion, and gave judgment; on a supersedeas, the circuit court reversed the judgment, and set aside the verdict; and on appeal, this court affirmed the judgment of the circuit court. That case differed from the one now before us, inasmuch as, there, it did not appear whether the jury had agreed on their verdict, before their dispersion; here, it was agreed on, written and signed. The present case, therefore, and the decision here made, wjll not, of necessity, overrule that. Whether the authorities cited, and the reasons relied on, go that length, will be decided when such a case comes up *7 again. I was one of the court, and doubtless concurred in that decision. I have not been able to find my note of the argument; and the court gave no reason for its opinion. It was also a case of the first impression here, and if it should be found wrong, the sooner it shall be corrected, the better for the country.
I am clearly of opinion to reverse the judgment of the circuit court, and affirm that of the county court.
Cabell, J. concurred.
Tucker, P.
Though this is clearly distinguishable from that of Howie's adm'r v. Dunn Sf Co. in this, that here it expressly appears that the jury had agreed on their verdict before their dispersion, yet I am loath to rest it upon that difference. Some of my brethren, by whom the case of Howle's adm'r v. Dunn & Co. was decided, having expressed their doubts of its correctness, I feel myself at liberty to say, that I could not have concurred in that decision. The later adjudications, both in England and in this country, are certainly in conflict with it. The King v. Kinnear and others, 2 Barn. & Ald. 462. 1 Chitt. Rep. 401. 18 C. L. R. 115. S. C. Smith v. Thompson, 1 Cow. 221. And I think the soundest reasons sustain the last adjudications. Where, indeed, the party in whose favour the verdict is rendered, has been guilty of improper conduct in reference to the jury, it is proper ho should lose the benefit of his verdict. And even where the jury only have misbehaved, there is good cause to set aside the verdict, if the facts shew that it is not the result of their deliberate judgment. Thus, where they decided the cause by the cast of the die, or agreed to be bound by the opinion of the majority, the verdict rendered was properly set aside, because it was a verdict only in form and not in fact. But where the parties have not misbehaved, there seems no good reason why they should be exposed to the expense and vexation of *8 a new trial on account of the misbehaviour of the jury, . _ . , . . . • . .... it there is nothing m the transaction which gives reason to suspect the purity of their verdict. The jurors, indeed, are liable to punishment for their misconduct; and where that is gross and wanton, it ought to be unsparingly inflicted, in order to fence the jury trial from corruption and abuse. But the mere separation of the jury, where it appears they have neither been tampered with, nor have communicated with any person except their fellows, in relation to the matter given them in charge, ought not to vacate the verdict which they have rendered.
I am aware of the decision of the general court in M’ Caul’s case, 1 Virg. Cas. 271. but that was a case of felony, and there is much reason for great strictness in cases affecting the life or liberty of the citizen, and for great liberality in allowing a new trial to the prisoner, if a verdict be rendered against him by a jury who have separated against the direction of the court. Without, therefore, venturing to question this decision of1 the supreme criminal tribunal of the state, in relation to a criminal prosecution, I am still of opinion, that reason and authority sustain me in deciding, in the language of justice Bailey, that, in a civil case, “when the fact of separation per se is urged as the ground for a new trial, it is of no weight.”
Judgment of the circuit court reversed, and that of the county court affirmed.