## NIMS *v.* BIGELOW.

Where the plaintiffs and the defendant contracted with another in writing, under seal
to erect certain buildings; — *Held,* that as between themselves the agreement is not
conclusive that they were joint contractors; but that the plaintiffs may show by
parol that they were only sureties.

An action at law will lie by one partner against another to recover an amount
found due on an accounting between them, and which the defendant has promised
to pay.

The mere fact that the jury had separated at the adjournment, after rendering their
verdict, will not vitiate it; although at the coming in of the court the papers were
again committed to them, and the verdict modified, unless there be some evidence
of abuse.

ASSUMPSIT, by Nims, Buss & Woodward, to recover balance of
account for $106.02.   There was also in the plaintiffs' declaration
the counts for money had, &c., $200; money paid, &c., for like
amount; also for goods, wares, and merchandise, for $200.

Under the plaintiffs' money count, they specified a promissory
note, signed by the defendant, for $14.49, on demand and interest,
payable to the plaintiffs, or order, dated January 23, 1858; also,
the defendant's written order, drawn in favor of the plaintiffs for
$30 upon the Cheshire Agricultural Society, T. H. Leverett, agent,
dated June 15, 1858.   This order was given for an item of $28 in
part, which was charged in the plaintiffs' account in suit.   It was
credited on book at its date, but was not on the account annexed to
the plaintiffs' writ.   The defendant's plea was the general issue,
with a set-off of his account for $26.55, found charged to Buss &
Woodward, and not to the plaintiffs.   Some of the first items in the
plaintiffs' account the defendant insisted should have been charged
to Bigelow & Stone.   Upon this the parties were at issue.   There
were some other items admitted to be properly charged to the
defendant in his private right, but for the greater part of the
remainder of the account the defendant alleged that he was a part-
ner with one of the plaintiffs.   The plaintiffs, on the other hand,
denied the copartnership.   Buss produced their books in court,
showing that the items of their account were made up of lumber;
principally shingles, boards, window frames, sash, &c., furnished by

them to the defendant, for the purpose of enabling the defendant to build and finish, agreeably to contract, certain buildings erected for the Cheshire County Agricultural Society, in Keene, in the summer of 1858. The plaintiffs went into the contract, as they said, as sureties for the defendant, and not as partners. Buss testified that all said materials and lumber were furnished under the agreement that the plaintiffs were to charge Bigelow directly for every thing; that the money from the society was to be paid to them in the first instance, until they had their pay, and the defendant was to have the rest; that they were not to share profit and loss with Bigelow; that they manufactured a portion of the things charged, and charged him at the time of the delivery with the several matters embraced in their account. This was testified to by Buss, who kept the books produced at the trial; and that the society issued previous proposals for the erection of the buildings; the defendant was an applicant for the job, and the plaintiffs were not; that the society refused to let the work to the defendant on his responsibility, and required security; that Bigelow applied to them for assistance.

The managers of the society expressed a willingness to receive the plaintiffs as security. Accordingly a written contract was made, and signed by the parties. Much verbal testimony on both sides was received as evidence of the existence of a partnership, or otherwise, before a copy of said written contract was produced, the original being shown to be lost. Upon the production and examination of a copy of the written contract, which made a part of the case, the court charged the jury that the contract did not appear to be conclusive of the original intention of the parties as to the question of partnership, and they might examine the instrument, mode of signing, &c., and weigh it, with the other evidence in the case, in determining the question at issue. The defendant excepted to this part of the charge. There was but little dispute about the articles as charged which went into the buildings. The defendant testified that he applied to the plaintiffs for assistance, and that they agreed to come in, as he supposed, as partners; that he had charge of the work; that he made, in his name, or on his own private credit, sundry purchases of lumber at Marlow, and of Wilder; employed Comstock and others to do the work; that the whole job, including the sheathing of the buildings, finishing the barn, extra work, &c., amounted to about $1200; that generally he drew his orders and filed his bills and vouchers with Leverett, the treasurer of said society; that he received all the money from the treasurer for the whole job, and paid out the same, paying the plaintiffs at one time toward their account $200, at another time $68; at other times paying them, so as to reduce their account, including the order, below $100.

Bigelow testified that he frequently talked with the plaintiffs about the work; complained of some of the plaintiffs' charges being too high; kept a book of accounts, which was produced in court. It contained no company charge or credit, and no charges had been made, except an account for some extra labor. There had been no agreement to keep a company account, and none had been kept, or

made out, to his knowledge. He had $50 left in his pocket, proceeds of the job, when he got through. The sheathing and finishing the barn were separate contracts, being made after the written contract, and not in writing — made with Nims. This was denied by Buss. Nims was not produced by either side. Buss testified that the defendant had looked over with him their accounts on his book, and that he had promised to pay the balance, as there stated. Upon this point the court charged the jury, that if they believed the defendant understandingly looked over the plaintiffs' claims, and that he promised to pay them the balance due, it being found due upon a full and final liquidation of all their accounts, he would be legally bound, admitting the accounts to be of a company character.

The rule and finding would be for the defendant, if they believed the account did not embrace the liquidated balance of all their accounts. It was admitted that the plaintiffs, more than a year prior to the commencement of this suit, had furnished the defendant with a transcript of their account, which the defendant had retained. Among other things, the court told the jury that in order to get at the knowledge whether there was an actual copartnership between the parties, they had a right to look at the conduct of the parties under that supposed contract, to their acts done and the declarations, to the mode and manner of keeping their accounts, and their books, as explanatory of the true intent of their contract, and how they understood it at the time. They might regard the manner in which the parties dealt with each other at the time the business was going on, and how they charged, and how they paid each other, and for this purpose they might examine their books, and see whether their charges were genuine, or manufactured to meet the present emergency. The defendant excepted to that part of the charge. The order in the case was admitted to have been given for the payment of $28, which was originally charged for shingles purchased by the plaintiffs, and which were intended and used on the barn erected on the grounds of the agricultural society, and which was admitted to have been built by the defendant on his private account. The court instructed the jury that as the order had not been paid, if they now found it due, under the plaintiffs' money count, they would of course strike out the $28 for the shingles from the plaintiffs' account. The jury returned their verdict for the note and interest, and $97.72, and interest from date of writ, on the account of the plaintiffs.

The court directed a general verdict for the amount thereof. This being the hour of adjournment at noon, the court adjourned to the afternoon, and the jury dispersed. Upon the return of the court in the afternoon, and before the commencement of other business, the jury being in their seats, the court inquired of the foreman if the jury had allowed the order. The jury replied, they had allowed the $28 on account, but not the order. Thereupon the court ordered the papers to be committed to the jury, to find the order due or not due. If due to the plaintiffs, then to strike out the $28 from the plaintiffs' account, and allow interest on the order, according to its tenor; and the defendant objected. These were

according to the original instructions first given on the subject. The jury returned into court, allowing the plaintiffs' note and interest, his order and interest, and a balance on account of about $66, and interest from date of writ. A general verdict was drawn up accordingly. To this last proceeding the defendant excepted, and moved to set the verdict aside, and for a new trial.

### COPY OF CONTRACT.

It is agreed by Nims, Buss & Co., of Keene, in the county of Cheshire and State of New-Hampshire, and Enos Bigelow, of said Keene, of the one part, and the Cheshire County Agricultural Society of the other part, as follows: Said party of the first part agree to construct and complete for said society, on the Cheshire County Fair Ground, in said Keene, to be located as the building committee of said society, or a majority of them, shall designate, in presence of each other, a good, thorough and substantial wooden building, of the form, size and materials hereinafter specified, reference being had to the plan drawn by N. N. Sawyer, which is to be considered a part hereof; to furnish all necessary materials of good and suitable quality, and the work to be done in a thorough and workmanlike manner on or before the tenth day of September next, for the consideration hereinafter mentioned. Said building is to be, &c.

### DESCRIPTION AND SPECIFICATIONS.

Said party of the second part agree to pay said party of the first part, for the building aforesaid, fully completed, the sum of nine hundred and sixty-five dollars, as follows: five hundred dollars by the fifteenth day of August next, or when said building is raised, and the remainder when the building is completed; in addition to which said parties of the first part are to have the old building, now standing upon said grounds; said parties of the first part further agree that in case said building is not completed on or before the tenth day of September next, they will pay to said parties of the second part, on said tenth day of September, the sum of two hundred dollars as damages.

Witness the hands and seals of said parties this first day of July, A. D. 1858.

Signed,          NIMS, BUSS & CO.   [Seal.]
                 ENOS BIGELOW.      [Seal.]
                 T. H. LEVERETT,    ⎫                [Seal.]
                 N. CONVERSE,       ⎬ Committee.     [Seal.]
                 CALVIN MAY, Jr.,   ⎭                [Seal.]

*Webster*, for the plaintiffs.

*Lane*, for the defendant.

BELLOWS, J. The question was whether the plaintiffs and the defendant, as between themselves, were joint contractors, or whether the defendant alone was the contractor, and the plaintiffs merely

sureties. Upon this point the evidence in respect to the main building was conflicting; but the defendant contended that the contract in writing between the plaintiffs and the defendant of the one part, and the Cheshire County Agricultural Society, of the other part, was conclusive; and that parol evidence that the plaintiffs were sureties only, was inadmissible. The court, however, instructed the jury otherwise; and that the written contract was to be weighed with the other evidence in determining the question.

These instructions we think were right. It is well settled in New-Hampshire that, as between the sureties and payee of a promissory note, or other written contract, parol evidence is admissible to prove that one of the promisors was but a surety, for the purpose of letting in the defense that the surety was discharged by some agreement with the principal for indulgence, or other variation of a contract. So it is equally well settled that such evidence is admissible, as between the promisors, to enable the surety to recover of the principal, on the implied contract of indemnity. The question before us must be governed by the same principle. Here the plaintiffs and the defendant apparently contracted as principals, but for the purposes of determining their rights, as between themselves, parol evidence may be received that one party was but a surety, as in the case of promissory notes.

Another question arises upon the instructions to the jury, that if the parties looked over the accounts, and upon a full and final liquidation of all their accounts the defendant promised to pay the balance found to be due, he would be bound in this action, although such accounts were found to be of a partnership character. Of the general correctness of these instructions there can be no doubt. *Gibson* v. *Moor*, 6 N. H. 547; *Wright* v. *Cobleigh*, 21 N. H. 389; Story on Part., sec. 219, note 1, and cases cited; *Foster* v. *Allanson*, 2 T. R. 479; *Wray* v. *Milestone*, 5 M. & W. 21.

There can be no objection to the instructions that the jury might consider the manner in which the parties conducted the business; how they charged and how they paid each other, there appearing no objection to the reception of the books in evidence.

The jury having returned a verdict for the note and interest, and for $97.72, and interest from the date of the writ, the court directed a general verdict, and adjourned until afternoon. On the coming in of the court, and before any other business was done, the court inquired of the foreman, the jury being in their seats, if they had allowed the order; to which he replied they had not, but had allowed the $28 in the account. The court then ordered the papers to be committed to the jury, to find the order due or not due, and if due to strike out the $28, and allow interest on the order; and to these proceedings, ordered by the court, the defendant objected. The jury found the order to be due, and interest; and a general verdict was drawn up accordingly.

That the court might properly have sent out the jury to correct this mistake before they separated, there can be no question; and there being no evidence or suggestion that any abuse was practiced during their separation, the only inquiry is, whether the mere fact

of such separation must vitiate the verdict.   Upon looking into the cases, it seems to be well established that the mere separation of the jury, without other evidence of abuse, will not affect the verdict; although it is suggested by *Parker*, J., in *State* v. *Prescott*, 7 N. H. 287, that in criminal cases another principle ought to be adopted, namely, that injury to the prisoner should be presumed, unless disproved by the prosecution.   But in respect to civil causes the authorities are quite clear; as in *Barrett* v. *Phillips*, 1 Gall. 234; where a juror, without permission, and after the charge, separated from the rest and was gone two hours; was then brought back and a verdict was agreed on ; and *Story*, J., held this to be an application addressed to the discretion of the court, and refused to set aside the verdict; although he was of the opinion that it should be set aside, unless the conduct of the juror was free from any unfavorable presumption.   *Smith* v. *Thompson*, 1 Cow. 221, was similar, and the court held that there was no probability of abuse, and refused to set aside the verdict.   So is *State* v. *Babcock*, 1 Conn. 401.   In *Brandin* v. *Grannis*, in note to *State* v. *Babcock*, *Baldwin*, J., assumes as the law of Connecticut that if the jury should agree on a verdict and separate, and afterward, on reflection, agree upon a different verdict, they might lawfully do so.   So it is laid down in Co. Litt. 227, b, that in case the court be adjourned the jury may give a privy verdict to the judge, and then they may eat and drink ; and then the next morning they may affirm or alter their privy verdict.

In *People* v. *Douglass*, 4 Cow. 26, which was a capital case, it was held that the mere separation of a juror, without the least suspicion of abuse, would not vitiate the verdict.   In *Winslow* v. *Draper*, 8 Pick. 170, a similar doctrine was held in a civil case, where the jury had agreed on Saturday afternoon, and separated until Monday, by the permission of the court, when they were sent out and they put the verdict in form.   So, also, is *Rex* v. *Wolf*, 1 Chit. 401.   So if there be a mistake the court may send back a jury to reconsider it. *Bradley* v. *Sheldon*, 7 Johns. 32; *Horton* v. *Horton*, 2 Cow. 589. In *Clough* v. *Clough*, 26 N. H. 33, on the return of a verdict the jury were inquired of as to its meaning, it being in favor " of the defendant in damages, amounting to $10;" but the plaintiff objecting, an answer was not then made ; but subsequently, and after they had separated, the inquiry was again made and answered, and a general verdict then entered, which the court refused to set aside.

In *Chapman* v. *Coffin*, 14 Gray 454, the jury had agreed upon a verdict and separated, and in the morning on being rendered it was found that no damages were assessed; and the court, against the defendant's exception, directed the jury to return and assess the damages, which they did ; and the court held this was no such inequality as should disturb the verdict.

The only difference between this case and the one before us is, that here the jury separated after the verdict was rendered, and when they might have considered their connection with the case ended, and therefore at liberty to talk about it.   This, however, only goes to the greater probability of abuse ; and as nothing of the kind is proved or suggested, and of course nothing reported by the

presiding justice, it may well be regarded as a case of mere separation, with no proof of abuse, and, therefore, upon the authorities, not a case for setting aside the verdict, especially as the change in the amount is of a very trifling character.

Of course the power of sending out a jury for a further consideration, after they had once separated, with the understanding that their duties had been discharged, should be very sparingly and cautiously exercised, and never under circumstances to endanger the substantial rights of the parties; and from any thing that appears in the facts reported there is not the least reason to suspect that the discretion vested in the judge has been used injuriously to the defendant; and therefore there must be

*Judgment on the verdict.*