# CASES

## ARGUED AND DETERMINED

# SUPREME COURT OF JUDICATURE

## STATE OF NEW-YORK.

IN OCTOBER TERM,* 1831, IN THE FIFTY-SIXTH YEAR OF OUR INDEPENDENCE.

---

### THE PEOPLE *vs.* RANSOM.

A non-compliance by the clerk to put the names of *all* the persons returned as *jurors* into a box, from which juries for the trial of issues are to be drawn according to the statnte, is not sufficient ground for *setting aside a verdict,* either in a *criminal* or *civil* case, where the court are satisfied that the party complaining has not, or could not have sustained any injury from the omission; *and it was accordingly* HELD, where on the trial of a *capital case,* after 28 jurors had been called, 11 of whom were approved and sworn, and 17 peremptorily challenged, it was discovered that the ballot containing the name of a juror who had answered on the calling of the *general panel,* was not in the box containing the names of the jurors returned for the court, and which on search was found and put into the box, and drawn out of it by direction of the court, and the juror sworn to serve on the jury, that the *irregularity* or *neglect* of the officer, was not such as to entitle the prisoner to a new trial, it appearing to the court that the omission to put the ballot into the box proceeded from neglect, and not from design.

MOTION to set aside a verdict for irregularity in empanneling the jury. The prisoner who was indicted for murder, was put on his trial, at the New-York oyer and terminer, on the 22d September, 1831. The general panel of petit jurors was called over, and a juryman of the name of *Robert Smith*

* The CHIEF JUSTICE was prevented by indisposition from attending court during this term.

VOL. VII.                    53

answered when his name was called. The clerk then proceeded to draw the jury for the trial of the prisoner, by taking ballots containing the names of the jurors returned, from the box in which they were contained. When 28 jurors had been called, *eleven* of whom were sworn, and *seventeen* peremptorily challenged by the prisoner, the clerk announced that no more ballots remained in the box. The counsel for the prisoner stated that the name of *Robert Smith* had not been called. The clerk searched for the ballot containing his name, found it, and informed the court that it had not been put into the box with the names of the other jurors previous to calling the jury in this case, and explained the omission in the following manner: On the first day of the session of the court, to wit, the 19th September, when the panel of petit jurors was called, *Robert Smith* did not appear, and therefore his name was not put into the box. On the 21st September, *Smith* appeared in court, excused his default, and was sworn as a juror in the circuit court, but the clerk neglected to put his name into the box. On that day there was no trial in either the circuit or oyer and terminer. Upon this statement being made, the district attorney moved the court that the *eleven* jurors who had been sworn should be discharged, that the names of all the jurors should be returned to the ballot-box, and that the drawing commence *de novo*, as if no jury had been drawn; which motion was resisted by the counsel for the prisoner. The court, after consultation, ordered the ballot with the name of *Robert Smith* upon it to be put into the box, and to be drawn out of it as a juror in that case. To this order and decision the prisoner's counsel excepted. Upon the name of Smith being drawn from the box, the district attorney challenged him for cause, and after he was examined on oath, the challenge was withdrawn, and he was sworn and empannelled as a juror. The prisoner was found guilty, and the court of oyer and terminer respited his sentence until the advice of this court could be obtained in the premises. An affidavit of the clerk of the oyer and terminer was submitted, stating the omission to place the ballot containing the name of *Smith* in the box was not designed, but owing entirely to neglect.

ALBANY,
Oct 1831.

The People
v.
Ransom.

*Ogden Hoffman*, ( district attorney of the city and county of New-York. ) The names of such jurors only as appear at the *opening* of the court are to be written on ballots and put into a box, from which juries are to be drawn, 2 R. S. 420, § 59 and 64; but if the statute be otherwise construed, and it be the duty of the clerk to add the names of such as subsequently appear, the statute is but *directory* to that officer, and an omission by him in this particular affords no ground for setting aside a verdict. So it was held in *Cole* v. *Perry*, 6 Cowen, 584, where an objection was taken that the ballots containing the names of the jurors were not rolled or *folded* according to the requirements of the statute; and in *The People* v. *Vermilyea*, 7 Cowen, 382, the court say that a verdict will not be set aside, although the forms prescribed by the statute regulating the trial by juries are not strictly adhered to, if there is no reason to suspect the fairness of the proceeding. The principle governing in cases of this kind is, that if no injustice was done to the party, the court will not interfere. 12 East, 230. 4 Barn. & Ald. 430. The question is, has the prisoner been prejudiced, or could he by possibility have sustained prejudice? When *Smith* was called, the prisoner was yet entitled to three peremptory challenges : he did not choose to avail himself of the right to challenge Smith, and the fair presumption is that had Smith been the first juror called, he would have been approved by the prisoner. The prisoner has the right of *exclusion*, but not of *selection ;* if but 32 jurors appear, having the right to challenge 20, he has incidentally the right of selection ; but if the array be large, then he has only the right of exclusion. 12 Wheaton, 482. The remedy was by *challenge*, and not by motion in arrest. 8 Barn. & Cres. 417. 2 Mann. & Ry. 31. 5 Barn. & Cres. 254. The objection to putting the name of Smith in the ballot box cannot be considered as a challenge which, when made, should be distinctly announced that the district attorney may, if he chooses, accede to it. 4 Barn. & Ald. 471. 1 Chitty's Cr. L. 539. The offer of the district attorney to return all the ballots to the box, and to commence drawing the jury *de novo* obviates all objection to the regularity of the proceeding. 1 Chitty's Cr. L. 539, 543.

*M. C. Paterson & H. Maxwell*, for the prisoner. The statute prescribes with great particularity the mode of proceeding in empanelling a jury, and its requirements should be rigidly enforced, especially in favor of *liberty* or *life*. *Cole* v. *Perry*. cited by the district attorney, was a *civil* case, and the statute there was substantially complied with ; here it was wholly disregarded. There, too, it was manifest the defendant had sustained no prejudice ; here he may have sustained the greatest possible prejudice  Previous to Smith's name being put into the box. the prisoner had three peremptory challenges left٠ Had Smith's name not been put into the box, he would have had his selection of one out of *four talesmen*, who must have been summoned to complete the jury : by Smith's name being placed in the box, this right was reduced to the selection of one out of *three talesmen*, had he challenged Smith. The jury was not selected by *lot*, which was esteemed a privilege both by the *civil* and *common* law, and which is virtually recognized by the statute. *Blackstone* adverts to this *drawing by lot*, when he observes how scrupulously delicate, and how impartially just the law of England approves itself in the constitution and frame of a tribunal contrived for the test and investigation of truth. 3 Black. Comm. 365. All the cases cited by the district-attorney, in which courts have refused to set aside verdicts for irregularities in the empaneling of juries, were *civil* cases, except the one stated in the note to 12 East, 230, which was a mere *misnomer* of the juryman, the person summoned having actually attended and served, and the only error being in the panel. The distinction between *selection* and *exclusion* of jurors by a party on trial is a new idea unsupported by authority, and what was said in relation to it in Wheaton was not called for by the circumstances of that case. In the *civil law* the jurors are called *selecti judices*, and in Trials *per pais*. 122, it is said a party put on trial has the right to *choose* his jury. The statute is *mandatory*, and not *directory ;* its language is express and positive, and a departure from its requirements vitiates a verdict, and in conformity to this principle have been the decisions of this court. In *Coughnet* v *Easterbrook*, 11 Johns. R. 532, a justice's judgment was reversed, because it did not appear that a constable was sworn

to attend the jury. In *Cooper* v. *Bissell*, 16 Johns. R. 146, a judgment of the common pleas was reversed, because the venire was returned by the *coroner* instead of the *sheriff*, there being no suggestion on the record shewing the necessity of sending the writ to the coroner. In *The People* v. *Douglass*, 4 Cowen, 35, where two jurors separated from their fellows, took refreshments, and drank spirituous liquors, though not enough to affect them in the slightest degree, the prisoner was remanded, and a new trial ordered; and in *The People* v. *Mc-Kay*, 18 Johns. R. 212, the prisoner was also remanded, and a new trial ordered for the omission of a mere matter of form, the issuing of a valid *venire*, when, by the provisions of the statute, a *venire* was totally unnecessary and useless. As to the challenge to Smith not being formally made, the counsel insisted that it was substantially made, and that it would be so regarded, because to have pressed the challenge after the exception to the decision of the court that the ballot containing the name of the juror should be put into the box, would have been disrespectful to the court of oyer and terminer.

*Hoffman*, in reply. The only cases in which courts interfere to set aside verdicts in cases of this kind, where no prejudice is shewn, are where the defect appears on the face of the record, or where there is a sound objection to the juror, not depending upon the forms of proceeding. In *The People* v. *McKay*, and in *Cooper* v. *Bissell*, the error appeared on the face of the record, and therefore the objections were held fatal. *Coughnet* v. *Easterbrook* was a *certiorari* case to remove a *justice's* judgment; justices have no authority in civil cases but what is expressly conferred by statute, a strict and literal compliance with the statute is required from them, and for that cause the judgment in that case was reversed.

*By the Court*, SUTHERLAND, J. The revised statutes provide that a jury for the trial of an indictment shall be drawn in the same manner as is prescribed by law for the trial of issues of fact in civil cases, 2 R. S. 734, § 5; and in civil cases, where there is not a jury already empanneled in another cause, the statute directs " that the ballots containing *all the*

ALBANY,
Oct. 1831.

The People.
v.
Ransom.

ALBANY,
Oct. 1823.

The People
v.
Ransom.

*names of all the jurors returned and appearing at each court, shall be placed together in the same box, before any jury shall be drawn therefrom."* 2 R. S. 421, § 64. Here the ballot containing the name of Smith not having been placed in the box before the drawing of the jury commenced, it is said the statute was violated, and the prisoner is entitled to a new trial.

We have several times had occasion to consider the effect of an omission on the part of the officer, whose duty it is to draw and empannel jurors, to conform to the precise regulations prescribed by law in that respect; and we have uniformly held that this statute, like many others of a similar character, is to be considered as directory to the officers merely, and that a neglect to conform to its provisions will not, *per se*, be a sufficient ground for setting aside the verdict of such jury, where the court see that the party cannot have been prejudiced by it. 5 Cowen, 289.  7 id. 232.

The 59th section of the same act, 2 R. S. 420, provides that the clerk of the court shall cause the names of the several persons returned as jurors by the sheriff, with their respective additions and places of residence, to be written on several and distinct pieces of paper, and shall roll up and fold such pieces of paper, each in the same manner as near as may be, and so as to resemble each other as much as possible, and so that the names written thereon shall not be visible.   In *Cole* v. *Perry*, 6 Cowen, 584, a motion was made to set aside a verdict, on the ground that the ballots containing the names of the jurors were not folded at all, but were put open into the box, in such manner that the names might easily have been seen by the person drawing them.   On the other hand, the affidavit of the clerk who drew the jury was produced, stating distinctly that he did not see the names of the jury until after they were drawn.   The motion was denied, on the ground that the statute was directory merely to the officer drawing the ballots, and that the mistake of the officer in the discharge of his duty was not a ground for setting aside the proceedings, where no injury to the party complaining was shewn or pretended.   The principle of this case is believed to be fully sanctioned by a great variety of decisions in our own, and the English courts.

It is an established principle of the common law, in relation to the trial by jury, that after the jurors are once empanneled, they have no right to disperse, or take refreshments, without the leave of the court; and if they do, they may be punished as for a misdemeanor or contempt.  3 Black. Comm. 375. But it has been held in a variety of cases that the mere separation of the jury, though against the express directions of the court, and in violation of their duty, will not of itself be a sufficient cause for setting aside the verdict.  In *Smith* v. *Thompson*, 1 Cowen, 221, two of the jurors, after they had retired to consider of their verdict under the charge of a constable, eluded the officer and left the jury room; the one went to his own house, the other to a tavern, both took supper and remained all night.  They joined their fellows, however, in the morning, and the whole went into court together, and finally rendered a verdict for the plaintiff.  The court refused to set aside the verdict, on the ground that there was no reason to believe that the verdict had been affected by the circumstance of their separation, although their conduct was conceded to have been irregular and improper.  It was there remarked that the ancient strictness in relation to the conduct of jurors had been in modern times essentially relaxed ; and the truth of that observation, as well as the correctness of the decision, are abundantly supported by the authorities collected in the learned note of the reporter to that case.  The same decisions, under circumstances essentially similar, were made in *Hornton* v. *Hornton*, 2 Cowen, 589, and Ex parte Hill, 3 id. 355, and 3 Johns. R. 252.

That the doctrine upon this subject is the same in criminal, and even capital cases as in civil is clearly settled.  The case of *The People* v. *Douglass*, 4 Cowen, 26, was a conviction for murder.  During the trial, the jury had leave to retire from the box under the charge of two sworn constables, and the direction of the court to keep together, and return speedily into court.  Two of the jurors separated from their fellows, *drank whiskey*, took other refreshments, and conversed with the bystanders on the subject of the trial.  Upon an application for a new trial for this misconduct of the jury, each of the judges expressed a decided opinion that a mere separation of the jury, though in violation of their duty, and against the ex-

ALBANY,
Oct. 1831.

The People
v.
Ransom.

press directions of the court, and although in a capital case, would not of itself be a sufficient cause for setting aside the verdict, nor would the mere fact of eating vitiate the verdict; but the court were unanimous in the opinion that the drinking of ardent spirits, though not to an extent which produced intoxication, was a gross and fatal irregularity, and that its tendency to abuse was so strong and inevitable, that they would not inquire whether injury had actually resulted from it; they would hold it a conclusion of law, not to be rebutted, that its effect had been injurious, and on that ground principally a new trial was granted. The case of *The King* v. *Woolf Kinnear and others*, 1 Chitty's R. 401, fully sustains the general principal maintained in the cases already referred to. That was an indictment for a conspiracy, and the jury, during the interval of an adjournment, were permitted by the judge to retire to their respective homes, and a new trial was moved for on that ground. All the judges held that it was immaterial, as it regarded that motion, whether the separation of the jury was with or without the consent of the court; only in the latter case it would be a misdemeanor in the jury, while in the former it would not; and Abbott, Ch. J. says: "Though it may be a misdemeanor in them to separate without the consent of the judge, it will not avoid the verdict;" and each of the other judges expressed the same opinion.

The conclusion from these cases appears to me to be this: that any mere informality or mistake of an officer in drawing a jury, or any irregularity or misconduct in the jurors themselves, will not be a sufficient ground for setting aside a verdict, either in a criminal or civil case, where the court are satisfied that the party complaining has not, or could not have sustained any injury from it.

In *Hill* v. *Yates*, 12 East, 229, the court of king's bench refused to set aside a verdict in a civil cause, where the son of one of the jurymen answered to the name of his father, when called on the panel, and actually served as one of the jury, in lieu of his father, though he had never been summoned. I must confess that that case carries the doctrine to an extent which I should be unwilling to go. It appears to me to have been the verdict of but 11 men; the 12th man was no juror; he was not upon the panel; he was not the man intended to

be summoned, nor was he even in fact summoned.. Lord Ellen-borough put it upon the ground, that it was a matter within the discretion of the court, to grant or refuse a new trial, in such a case ; and that as no injustice was pretended to have been done, the court would not interfere in this manner, but leave the party to get rid of the verdict in some other way, if he could. He also observed, if they were to listen to such an objection, they might set aside half the verdicts given at eve-ry assizes, where the same thing might happen from accident, or inadvertence, and possibly sometimes from design, *espe-cially in criminal cases.* This case marks, emphatically, the strong reluctance of that court to interfere with the verdict of a jury upon any objection of form, not affecting the substan-tial merits of the case. With great deference and respect, however, I must say, that I think the court in that case push-ed the principle to a dangerous extent. The case upon which they mainly relied, differed from it most essentially. It is stated in a note, page 230. That was the case of one *Robert Curry,* who answered to the name of *Joseph Curry,* in the plaintiff's panel, and was sworn and served by that name. *Robert,* however, was the man actually summoned by the bailiff, and was qualified to serve as a juror. The court held that this was a mere *misnomer* in the panel of the jurymen, and was but cause of challenge, which, on being stated, would have been instantly remedied, by altering the panel, and re-fused to interfere, on the ground of irregularity, although it was a case of conviction for a capital felony. There the ju-ryman who served was the man who was intended to be sum-moned, and who was actually summoned ; and the mistake was simply in his christian name, as put on the panel. The case of *Wray* v. *Hearn & Hancock,* Willes, 488, was also a case of *misnomer* merely. One of the jurors was named *Hen-ry* in the *venire,* the *habeas corpora,* and the *postea,* whereas his real christian name was *Harry.* He was, however, the man intended, and was a competent juror ; and the court refused to set aside the verdict. But the case of *Norman* v. *Beamont,* Willes, 484, was, in its circumstances, precisely like the case of *Hill* v. *Yates,* 12 East ; one of the jurymen was not return-ed on the nisi prius panel, but answered to the name of a per-

son who was, and the verdict was set aside on that ground. So, also, in the recent case of *The King* v. *Tremain*, 7 Dowl. & Ryl. 684, a son personated his father, as a juror, and joined in a verdict of guilty against a person indicted for perjury. The son was under age, and was not qualified by property to serve as a juror. It was held that this was a mistrial, and a new trial was granted. The judges all attach great importance to the circumstance, that the intruding juryman had not the legal qualifications of a juror. They consider it as the verdict of only 11 jurors, on that ground. But it is evident that the decision in *Hill* v. *Yates*, did not meet their approbation. *Dewey* v. *Hobson*, 6 Taunt, 460, was precisely like the case of *Hill* v. *Yates* ; a man not summoned answered to the name, and served in the place of one of the jurors summoned. The fact was discovered before the verdict, and the plaintiff, notwithstanding, insisted upon retaining the juror, and a verdict was rendered in his favor. The verdict was set aside ; and the court endeavor to distinguish it from *Hill* v. *Yates*, on the ground that the plaintiff was apprized that he took the verdict at his peril. But it is apparent that they did not approve of the decision in that case.

The case of *The King* v. *Hunt*, 4 Barn. & Ald. 430, bears a strong analogy to the case at bar. That was the case of an information for a libel before a special jury ; only 10 of the special jury attended, and two *talesmen* were sworn, and the defendant was convicted. He moved for a new trial, on the ground that the officer had omitted to summon the two special jurymen, who had not attended ; and it was contended that it was absolutely necessary that all should be summoned ; that the act of parliament was imperative, for it required all to be summoned ; and if two might be omitted, so might any other number. But the court unanimously refused the motion, saying that it would be an alarming principle to establish, that a verdict could be set aside, because the sheriff had omitted to summon one juryman out of the whole panel ; that applications of this sort were addressed to the discretion of the court; that if the officer had not done his duty, he might be punished for it ; and if his omission has actually produced prejudice to the party, then the court in its discretion, might prevent

injustice being done, by granting a new trial. In that case the omission had not been shewn to have been prejudicial to the defendant, and therefore the motion was refused. This, I apprehend, is the true rule to be collected from all the cases.

The cases of *Cooper* v. *Bissell*, 16 Johns. R. 146, and *The People* v. *McKay*, 18 Johns. R. 212, have no bearing upon this; in both those cases the error complained of appeared on the *face of the record;* and where that is the case, unless it is cured by the statute of jeofails, it is always fatal. In the first case, the record stated that the *coroner* of the county of Oneida returned the venire; without any award of the venire to the coroner, or any suggestion of special facts to authorise such award, it of course did not appear that the coroner had any authority to execute the process, and the verdict and judgment were on that ground clearly erroneous. In *The People* v. *Mc-Kay*, the defendant was tried for murder, and convicted. He was brought into this court by *habeas corpus*, and the indictment and proceedings against him in the court of oyer and terminer were also returned, in obedience to a certiorari, directed for that purpose. Upon the papers thus before the court, the counsel for the prisoner moved in arrest of judgment, on the ground that no *venire* had been issued to summon the petit jury; and it appeared that the venire issued was not under the seal of the court, and that no official return had been made to it by the sheriff. It was admitted by the counsel for the people that the case stood precisely as though no venire had been issued, it having no seal, and therefore was absolutely void; but they contended that no venire was necessary. The only question then, was, whether the judgment could be sustained, when the record shewed that no venire had been issued. Judge *Spencer* says: "Inasmuch, then, as a *venire* was necessary at the common law, and as the statute yet *requires it to be issued,* the omission to issue it, *we must consider an error apparent on the record;* and in such a case, affecting life, we do not feel ourselves authorised to dispense with a process required by the common law, and also by the statute, although we may not be able to perceive much use in continuing it." The decision proceeded on the ground that *the error was apparent on the record,* and the court could not disregard it.

The case in 11 Johns. R. 532, was a certiorari case, and the judgment was reversed, on the ground that it did not appear from the return that a constable was sworn to attend the jury when they retired. These inferior justices' courts derive all their powers from the statute by which they are created, and they must conform, in all respects, to its requirements; no intendments are made in their favor, and the statute positively required that a constable should be sworn to attend the jury; the omission was therefore fatal.

The case at bar then resolves itself into the inquiry, whether the prisoner was, or could have been prejudiced by the manner in which the name of Smith was drawn as a juror. He was a competent juror as to qualifications, and had been duly summoned. The objection to him rests solely on the ground that the ballot containing his name was not put into the box until all the others had been drawn out. This is accounted for in a manner which repels all suspicion of design or unfairness on the part of the officer who drew the jury. It will also be borne in mind that Smith was the 12th juryman, and that the prisoner had at that time three peremptory challenges left, and that if Smith had not been called and sworn, a *talesman* must have been taken. The prisoner, therefore, had the absolute power of excluding Smith from the jury, or of saving his peremptory challenges, and objecting to him for cause. I can see no possible manner in which his rights could have been affected. It cannot be said that if Smith's name had been drawn at an earlier period, the prisoner might have accepted him as a juror, and have excluded one of the other eleven; he is not permitted to say that there was any just ground of objection to those jurors. The supreme court of the United States, in *The United States* v. *Marchant*, 12 Wheat. 482, have well said, that the right of peremptory challenge is not of itself a right to *select*, but a right to *reject* jurors. It excludes from the panel those whom the prisoner objects to, until he has exhausted his challenges, and leaves the residue to be drawn in the ordinary and established manner. What jurors, in particular, shall try the cause, depends upon the order in which they are called; and the result is a mere incident, following the challenges, and not the absolute selection of the prisoner,

resulting from his power of challenge. In considering wheth-
er the prisoner has been prejudiced by the course that was pur-
sued, the circumstance may fairly be taken into consideration,
that his counsel resisted the motion of the public prosecutor,
to set aside the whole panel, and commence the drawing *de
novo.* If this proposition had been acceded to, it certainly
would have secured to him all the advantages which it is now
contended he m ay have lost. Whatever irregularity, there-
fore, there may have been in this case, it is most evident that
it has not affected, or prejudiced in any manner the rights of
the prisoner, and that he is not, according to the best establish-
lished principles, entitled to a new trial.

It may admit of some question whether the objection taken
at the trial can be considered strictly in the nature of a *chal-
lenge* for cause. The objection was made to the decision of
the court, that the ballot should be put into the box; when it
was drawn out, the juror was not objected to. In a case of
life and death, however, the court would make the most liber-
al intendment, in order to give to the prisoner the benefit
even of technical objections. Considering it as a formal chal-
lenge, we are of opinion that it was properly overruled.