Neilson, Ch. J.
The plaintiffs had acted as brokers for the defendant in contracting for the purchase and sale of cotton. The contracts were on time, and had been in each instance closed without the delivery or acceptance of the cotton. The action was brought on an account stated; balance claimed, $1,398.76. The most serious question raised on the trial related to the validity of those contracts. The jury were instructed that if the contracts had been made with the mutual understanding or intent that the cotton was not to be delivered or accepted, they were illegal, and the plaintiffs could not recover ; that in determining that question the jury were to consider the evidence, the form of the contracts, the course of business pursued, and the attending circumstances. In finding the verdict for the plaintiffs, the jury appear to have determined that the account had been rendered to and retained by the defendant without objecting to its correctness ; and that the contracts were not made with the intent that no cotton should be delivered.
An application is now made on behalf of the defendant to set aside the verdict on the ground that certain irregularities had occurred.
It is claimed, and by the certificate of some of the jurors (which I shall respect as if it were an affidavit), has been proved, that in their deliberations, and in agreeing on the verdict, they did not consider the question whether it was the intention of the parties, in making the contracts, that no cotton should be *369 delivered or accepted. It is sufficient to say that it is well settled that the sworn statements of jurymen, as to the extent and character of their private deliberations, cannot be received to impeach or qualify their verdict. But where the verdict has been erroneously stated to the court or entered by its clerk, affidavits may be received to correct the error. Even this practice, so manifestly in aid of justice, was adopted after much contention. The cases as to each rule are cited in Dalrymple v. Williams (63 N. Y. 361).
The other irregularity charged deserves serious attention. Addison Chapman, of 141 Java street, in this city, had been drawn as one of the jurors to serve at the term when this cause was tried. The formalities imposed by statute had been observed, the jury list, duly certified by the commissioner, had been received and entered in the records of the court, and the notices served on the jurors by the sheriff. Mr. Chapman was thus served. He did not attend the court as required, but some person who assumed and answered to Chapman’ s name, took the oath and served in his place and stead. He was with the jurors by whom this verdict was found. By what corrupt management that substitution- was brought about has not been discovered; and the name, age, residence and occupation of that pretended juryman remain unknown. His character may, perhaps, be inferred from the crime thus committed.
But in determining whether the verdict should be respected or not it is only necessary to refer to familiar principles, and to some of the cases as nearly akin to this case as can be recalled.
I pass over cases where the irregularity arose from the mistake of the officers in drawing the jury, as in 6 Cow. 584 and 7 Wend. 417; or where the question was one of misnomer merely, as in Willes, 488; or where the juror had in fact been summoned, but by *370 the wrong name, and had the requisite qualifications, as in 12 East, 231, note ; and other cases of alleged irregularity, somewhat unlike that before, us. The case of Hill v. Yates (12 East, 229) is more directly to the purpose. There the son of a. juryman whose name was on the panel, answered when his father was called, and served on the jury. A motion to set aside the verdict was denied. That decision has not been followed in the English courts, and with us was repudiated in People v. Rawson (7 Wend. 424). In Norman v. Beaumont (Willes, 484), .an action of trespass, damages one shilling, the verdict was set aside because Richard Shepherd, not on the nisi prius panel, answered as Richard Greater, whose name was on, and having been sworn acted as one of the jury. The same doctrine was laid down in King v. Tremain (7 Dowl. & Ryl. 684) and in Dovey v. Hobson (7 Taunt. 464), substituted jurors acting, and the verdict set aside. As in such cases the mere record would appear to be complete, it was held that the proper mode of raising the question of regularity was by extraneous ptroof. It is obvious, also, that where the suitor has no notice of the fact that the stranger, taking his seat with the jury, is an intruder, nothing in the nature of consent or waiver can be imputed, nor does the duty to challenge apply, says Willes, save to one who “ is capable of serving if the objection be answered.” Ch. J. Willes and Judge Littledale concur in saying that the intruder “is no juror at all,” and in several of the cases where the jury was thus made up, the judges refer to the verdict as that of eleven men. In disapproving of the case of Hill v. Yates, to which we have referred, Judge Sutherland says : “It appears to me to have been the verdict of but eleven men ; the twelfth man was no juror ; he was not on the panel” (7 Wend. 424).
I am thus, by a strong concurrence of authority, *371 some of the cases civil, some criminal, brought to the conclusion that the verdict in this case cannot stand. It was the verdict of eleven men. But another infirmity attaches. The stranger who personated Chapman was with the eleven jurymen in the room, taking part in their deliberations, apparently entitled to their respect and confidence, and whether his influence was good or evil, his presence there was improper.
In view of all this, I am not able to say that the defendant has not suffered from the irregularity. Regarding this as a mis-trial the verdict must be set aside, but without costs.