N. WAGMAN & COMPANY, INC., Plaintiff, *v.* SCHAFER MOTOR FREIGHT SERVICE, INC., and MOON CARRIER CORPORATION, Defendants.

Municipal Court of New York, Borough of Manhattan, Fifth District, May 18, 1938.

*Norman S. Rein* [*Benjamin L. Tell* of counsel], for the plaintiff.

*Harry P. Rich* [*Herbert M. Bobrow* of counsel; *Benjamin L. Tell*, on the brief], for the defendant Schafer Motor Freight Service, Inc.

*Hill, Rivkins & Middleton* [*Eugene P. McCue* of counsel], for the defendant Moon Carrier Corporation.

SHALLECK, J.   On February 14, 1938, counsel for all the parties appeared in Part II of this court for the purpose of selecting a jury.  Six prospective jurors were summoned to the jury box. After questioning by counsel, an entire jury was found acceptable. The justice presiding in that part instructed the jurors to return to the general jurors' room to await the summoning of the case for trial.  The case could not be reached for trial that day, and the jurors were excused until the next morning.

The following day, February 15, 1938, the case was assigned to Part VII for trial.  A court officer summoned the jurors who had been selected the day before, and accompanied them to Part VII. Counsel went to that part and advised the court that they were ready to proceed.

The jury took its place in the jury box, and were sworn.

The case was then tried. After the court's charge the jury retired and returned a verdict against the defendant Moon Carrier Corporation.

Subsequent to the verdict it was discovered that one of the jurors, who had been selected as juror No. 6 the day before in Part II, was not the juror who heard the evidence and deliberated on the case. An error had occurred at the time the court officer summoned the jurors from the jurors' room in Part II. When the name of juror No. 6 was called, another juror (not impaneled), misunderstood the name, and mistaking it for his own, proceeded to go along with the jury which heard the evidence and deliberated in this case. The juror No. 6 who was originally selected had left the room for a few minutes at the time the court officer called his name, and was unaware that he had been called.

The defendant against whom judgment had been rendered now moves to set aside the verdict and for a new trial.

The only question presented for decision upon this motion is whether the jury which heard the evidence, deliberated and rendered the verdict in this case, was legally constituted and qualified to render such verdict within the meaning of the Constitution and laws of this State provided therefor.

Article I, section 2, of the Constitution provides that " the trial by jury in all cases in which it has been heretofore used shall remain inviolate forever; but a jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law." Pursuant to this provision, the Legislature enacted certain statutes relating to selection and waiver of jury trials which will be referred to hereafter. The parties under this article and those statutes were entitled to a jury trial. Such jury trial was demanded by both defendants.

A jury once selected must hear the facts of the controversy and determine the issues between the parties. In reaching a determination the jury must be indifferent and impartial, in order that it reach a just verdict. The fact that a juror is in the employ of a party to the action or is a stockholder or employee of a corporate party or is related by blood or marriage to any party constitutes a disqualification of such juror and is subject to a challenge to the favor. (Civ. Prac. Act, § 452.) Even if such reason for disqualification does not appear, a party is entitled to a number of peremptory challenges. (Civ. Prac. Act, § 451.) None of the parties to this action challenged either to the favor or peremptorily, the juror who sat in deliberation; nor did they exhaust the number of peremptory challenges allowed to them upon the selection of the entire jury.

Neither the commendably diligent research on the part of counsel nor the research on the part of the court disclosed any case which is quite like this on its facts. There have been many instances, both in England (*Dovey* v. *Hobson*, 6 Taunt. 460; *The King* v. *Tremearne*, 5 Barn. & Cress. 254; *Hill* v. *Yates*, 12 East, 229), and in this country (*McGill* v. *State*, 34 Ohio, 228; *Commonwealth* v. *Parsons*, 139 Mass. 381; 31 N. E. 767; *People* v. *Ransom*, 7 Wend. 417; *Dayton* v. *Church*, 7 Abb. N. C. 367; *State* v. *Sternberg*, 59 Mo. 410) in which juries have been irregularly or mistakenly chosen, impaneled and sworn, or where persons who were not part thereof have been in the presence of a jury while deliberating. However, in none of these cases has a juror been selected without examination by the parties precisely as occurred here.

It is conceded that the right to examine prospective jurors is not absolute. But the contention of the moving defendant that such right has been given to it by statute, and that so long as the statute remains unabridged it may at all times insist upon such right, must be upheld.

" The terms ' jury,' and ' trial by jury,' are, and for ages have been, well known in the language of the law. They were used at the adoption of the Constitution, and always, it is believed, before that time, and almost always since, in a single sense. A jury for the trial of a cause was a body of twelve men, described as upright, well qualified and lawful men, disinterested and impartial, not of kin nor personal dependents of either of the parties, having their homes within the jurisdictional limits of the court, drawn and selected by officers free from all bias in favor or against either party, duly empanelled under the direction of a competent court, sworn to render a true verdict according to the law and the evidence given them; who, after hearing the parties and their evidence, and receiving the instructions of the court relative to the law involved in the trial, and deliberating, when necessary, apart from all extraneous influences, must return their unanimous verdict upon the issue submitted to them." (*Capital Traction Co.* v. *Hof*, 174 U. S. 1, 15.)

To guarantee that litigants would receive a trial by a jury so composed, and so disposed, the statutes allowing challenges were enacted under the permissible provision of article 1, section 2 of the State Constitution. It was impossible to determine whether juror No. 6 came within the provisions of the section which allows a challenge to the favor. Irrespective of whether this was so, the moving defendant did not have the opportunity to make inquiry with respect thereto, a right which had been given to it by the Legislature.

Except as limited by section 120 of the Municipal Court Code, " the first twelve persons who appear as their names are drawn and called, and are approved as indifferent between the parties and not discharged or excused, must be sworn and constitute the jury to try the issue." (Civ. Prac. Act, § 448.) Can it be said that under the facts here presented, in the absence of the opportunity to determine the impartiality of the juror, the issues in the case were tried by a jury so constituted? Was not the moving defendant deprived inadvertently, but none the less substantially, of a substantive right?

The plaintiff contends that under section 190 of the Municipal Court Code the presumption of regularity should attach to the verdict here rendered. With that general proposition no one may disagree. The short answer is, however, that where facts are presented which seriously challenge that regularity, the presumption falls, just as in the case of any other presumption which may be overcome by refuting evidence.

The plaintiff also contends that the moving defendant accepted the jury as sworn. In this claim, plaintiff disregards the fact that the moving defendant did not know that a stranger was on the jury any more than the plaintiff knew such fact. Parties may not speculate at the beginning upon the subsequent outcome of a trial in order to guide its present action. Undoubtedly, had the jury rendered a verdict adverse to the plaintiff in this action and then the mistake discovered, the plaintiff would have been the moving party now instead of the defendant.

Neither the moving nor opposing parties to this motion had an opportunity to discover the unfortunate mistake. Even assuming that the rule of law is correct in principle in the case of *Jones* v. *State* (95 Ga. 497; 20 S. E. 211), cited by plaintiff, there was no lack of due diligence here as was presented in that case. Likewise, in the case of *Young* v. *State* (90 Md. 579), the opportunity to discover error was presented. It should be noted that in both of these cases the juror subsequently challenged was seen, examined, questioned, approved and accepted by counsel.

Nor did the moving party waive its right now to contend that the jury was not constituted properly, since it did not know of the presence of a stranger in the jury. As was stated in *Lord Constr. Co.* v. *Edison Portland Cement Co.* (234 N. Y. 411, 415): " Waiver is the voluntary giving up of a known right." The moving defendant never consented that a stranger sit as a member of the jury. It never even tacitly acquiesced therein.

The question here is not one of the method of selection of a jury which may be regarded as a mere legislative regulation. (*People*

v. *Meyer*, 162 N. Y. 357.) It is a question of whether or not the moving defendant has been deprived of a substantive right — the right to a trial by a duly constituted common-law jury. (*Wyne-hamer* v. *People*, 13 N. Y. 378, 458.) Nor can the occurring error be considered a mere irregularity, comparable to the case where a jury has not been sworn but the jurors were all acceptable to the parties after examination by them. (*Collinson* v. *Wier*, 91 Misc. 501; *Hardenburgh* v. *Crary*, 15 How. Pr. 307; *Jenkins* v. *City of Hudson*, 8 Civ. Pro. 70.)

The cases of *People* v. *Petrea* (92 N. Y. 128) and *People* v. *Ebelt* (180 id. 470) are not in point. They deal with the rendering of true bills by grand juries summoned pursuant to an unconstitutional statute under which indictments the defendants were subsequently tried and convicted. The Court of Appeals held in each case that the indictments were found by a *de facto* grand jury, and that the convictions were legal. They did not involve a question of whether the petty jury before whom the indictments were tried was duly constituted within the purview of the statutes.

The plaintiff lays great stress on the case of *People* v. *Flack* (9 N. Y. Supp. 279). In that case a jury was properly selected and approved by counsel. However, the complaint there was that a newspaper reporter had secreted himself in the room in which the jury was deliberating upon its verdict. The court properly held that there was no reason for upsetting the conviction since the stranger in the room was not a member of the jury, took no part in its deliberations, and exercised no influence whatever upon its arriving at a verdict. Also in none of the cases cited in that case was there presented a situation where a stranger, who allegedly exerted influence over the jury, was a member of such jury.

That there was prejudice in this case by the presence of a stranger is apparent. Actually only five jurors were selected and approved. The influence exerted by the sixth juror on the other five members of the jury transcends a mere possibility. The fact that he was able to participate in the deliberation should in and of itself lend credence to a probable influence, the extent of which not being a proper subject of inquiry.

The recent statute (Civ. Prac. Act, § 463-a) which allows a five-sixths verdict applies only in the event that a complete jury is first properly selected, approved and sworn, and does not apply where there is no complete jury, as occurred in this case.

The problem here presented goes far beyond the mere limits of honest mistake. It encompasses the possibility of fraud which is ever present in any complicated system of human contact. In this day when the selection of juries is so necessarily involved,

with its accompanying separation of supervision and diversity of jurisdiction, it becomes all-important that there be no mistake lest one party should be adversely affected. Irresponsible and unscrupulous litigants might work havoc with the true administration of justice in the future should a verdict, based as here, upon the questionable propriety of the jury, be allowed to stand. It would be better, rather, to have a retrial of a case than to have any shadow of doubt cast upon the finality of a verdict and upon the justice of the result.

The motion is granted. Settle order.